[No. 12767.   Department One. — May 31, 1890.]

## WILLIAM M. MENDENHALL, APPELLANT, v. FLOR- ENTINE PARIS ET AL., RESPONDENTS.

QUIETING TITLE — PATENT CONFIRMING MEXICAN GRANT. — Evidence of the plaintiff, in an action to quiet title, tending to show that the premises in controversy were. within the patented lines of a confirmed Mexican grant, under which he deraigns title, is sufficient to make at least a *prima facie* case in his favor.

BOUNDARIES — INTERMEDIATE MONUMENT — COMMON BOUNDARY AS A TER- MINAL MONUMENT. — While courses and distances in boundary lines are controlled by monuments, yet an arroyo, described in a patent confirming a Mexican grant as being at an intermediate point on a boundary at a certain distance from a station at the end of the line, is not entirely controlling as to such distance, or as to the locality of such station, if the station at the terminal point is further described as being at the intersection of the line with the boundary of an adjoining grant, the true location of which is settled and undisputed, and which operates as a natural boundary or monument, it being the evident purpose of the sur- vey for the patent to make such latter boundary common to the two grants, and not to leave a long narrow gore between them, which would result if the distance of the station from the arroyo should control as to the terminus of the line.

APPEAL from a judgment of the Superior Court of Alameda County.

The facts are stated in the opinion.

*J. C. Martin,* and *H. C. Crane,* for Appellant.

The established and fixed boundary line of the Pocitas grant, easily ascertained on the ground, is a monument which must control the discrepancy in distance from the arroyo.   (Code Civ. Proc., sec. 2077; *Woods* v. *Robinson,* 58 Tex. 655; *Land Company* v. *Saunders,* 103 U. S. 316; *Colton* v. *Seavey,* 22 Cal. 503; *Powers* v. *Jackson,* 50 Cal. 429.)

*J. W. Harding,* for Respondents.

The Arroyo Mocho must control as being a natural object and a noted landmark.   The "line of the prelim- inary survey of the rancho Las Pocitas" was a mere arti- ficial or imaginary line, and should not control.

BELCHER, C. C. — This is an appeal from a judgment of nonsuit in an action to quiet title to 51.20 acres of land in Alameda County. The land in controversy is described as a strip three and one half miles long, 4.62 chains wide at one end, and running to a point at the other end.

The plaintiff alleged in his complaint that the strip was a part of a Mexican grant called the rancho El Valle de San José, which was patented by the United States to Antonio Sunol and others on the 15th of March, 1865. The defendants denied that the strip constituted any part of the rancho named, or that plaintiff had any title thereto.

It is admitted that plaintiff proved at the trial, by mesne conveyances from the patentees, that he had sufficient interest in the strip to entitle him to have judgment entered in his favor, provided it was shown to be included within the patented lines of the grant. And whether it was so shown or not, that is to say, sufficiently to make a *prima facie* case, is the only question discussed by counsel and presented for decision.

The strip lies along the southwesterly side of a Mexican grant called rancho Las Pocitas, the preliminary survey of which was made in 1854 by one Lewis. The survey of the patented land which is involved in this case was made some ten years later by one La Croze. At the time of the trial, Lewis and La Croze were both dead. The dispute is as to whether or not the northeasterly line surveyed by La Croze is the same as the southwesterly line surveyed by Lewis; and the question depends upon the true location of what is called station 25.

To determine this question, it is only necessary to look at two lines described in the patent, the easterly and northeasterly. The first begins at station 24, and runs due north 458 chains and 75 links "to a post marked 'V. S. J. 25' station, at intersection of line with the pre-

liminary survey of the rancho Las Pocitas." It is de-
scribed as crossing the Arroyo Mocho at 456 chains and
50 links, or 2 chains and 25 links, south of the station.
The second line begins at station 25, and runs "thence
along said line" north 51 degrees 45 minutes west, 279
chains "to an oak-tree three feet in diameter, marked
'V. S. J. 26' station, and old corner of the rancho Las
Pocitas." Stations 24 and 26 are still found clearly
marked on the ground, and there is no controversy as to
their true location.

The Lewis line was retraced in 1874 by one Carlton, a
United States deputy surveyor, under an appointment
by the surveyor-general "to examine and verify the line
and establish the boundary of the El Valle de San José
rancho, running from station 24 to station 25"; and it
is admitted that the line was correctly retraced and lo-
cated. It was found to run from station 26 south 51
degrees and 49 minutes east, thus varying four minutes
from the corresponding line described in the patent, and
it met the line running north from station 24 about
seven chains north of the Arroyo Mocho. There was
nothing on the ground to indicate, and no evidence was
offered to show, where station 25 was actually located by
La Croze. It was relocated by Carlton at the point where
the two lines last mentioned met.

The Lewis line was again retraced by one Nusbaumer,
the county surveyor of Alameda County, in 1882. He
testified: "The course of the line of the preliminary
survey of the Las Pocitas as called for in the patent is 51
degrees and 45 minutes, while the course of this line as
called for by the survey made by Lewis is 51 degrees
and 50 minutes, which is 5 minutes more." And again:
"If you run due north from station 24 till you get two
.chains and 25 links north of the Arroyo Mocho, and then
run to station 26, the course would be 51 degrees and 4
minutes east, which would make a difference of about
three quarters of a degree from the call of the course in

the patent." He further testified: "If I run from station 24, the distance called for by the patent will place that corner (25) 2 chains and 30 links beyond the creek. The patent fixes that corner 2 chains and 25 links north of the creek, according to distance; . . . . but the line of the preliminary survey of the rancho Las Pocitas is at this point, as I measured it, 7 chains north of the Arroyo Mocho."

In view of the above and some other slight discrepancies, it is argued for respondents that the Arroyo Mocho was a controlling monument, and that station 25 as fixed by La Croze could not have been placed at a greater distance therefrom than 2 chains and 30 links, and that the preliminary survey of the Las Pocitas was an artificial or imaginary line only, and should be disregarded.

It is undoubtedly true that courses and distances are controlled by monuments. But while the arroyo was a fixed and visible monument, still it was at an intermediate point, and not at the end of the line. It cannot, therefore, be said to be entirely controlling.

In our opinion, the Lewis line, its true location being settled and undisputed, was a natural boundary or monument, and the fact that it met the line from station 24 at a point 7 chains north of the arroyo was not sufficient to cause it to be disregarded. Beside, in making the survey for the patent, the evident purpose was to make the two grants adjoin, and not to leave a narrow gore three and a half miles long, between them. This is clearly shown by the calls "to station at intersection of line with the preliminary survey of the rancho Las Pocitas; thence along said line," etc. The discrepancies in the courses may be accounted for by the fact that the different surveys were made at different times and by different instruments.

We think the evidence tended to show that the strip in controversy was within the patented lines of the grant,

and that it was sufficient to make at least a *prima facie* case for the plaintiff. This being so, the case should have been fully tried and not terminated by a nonsuit.

We therefore advise that the judgment be reversed, and the cause remanded for a new trial.

VANCLIEF, C., and GIBSON, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded for a new trial.