*351
 
 SCHOTTKY, J.
 

 Plaintiff above named commenced an action against defendants alleging that defendants without right had constructed and were maintaining an irrigation ditch, known as the Hammond Ditch, across a portion of plaintiff’s land, and prayed for an injunction enjoining defendants from maintaining said ditch and for damages resulting to plaintiff by reason of its construction.
 

 Defendants filed an answer denying that said ditch was on plaintiff’s land and also setting up the defenses of estoppel and the statute of limitations. Defendants also filed a cross-complaint seeking to quiet title to their lands, to establish that the ditch in controversy was on their own property and not on any portion of plaintiff’s land, and for damages for plaintiff’s destruction of part of the ditch.
 

 At the trial plaintiff sought to establish the west boundary line of her property, being the section line common to Sections 33 and 34, Township 41 North, Range 5 West, M.D.M., Siskiyou County, California, and in so doing to establish that the defendants’ ditch, commonly known as the Hammond Ditch, crossed plaintiff’s property at the quarter corner common to Sections 33 and 34, said above-mentioned township and range. Defendants sought to establish that the ditch did not invade plaintiff’s property. The chief dispute was the location of the common boundary line between Section 33 and Section 34, and of the southwest corner of plaintiff’s property. The principal witnesses were three civil engineers, Albert Parrott, County Surveyor of Siskiyou County, who was called by defendants, and Jesse A. Bumgarner and Arthur O’Connor who were called by plaintiff. The trial court in its memorandum opinion after analyzing the testimony of the engineers stated:
 

 “The Court has also considered the testimony of Arthur O’Connor, who is a qualified surveyor and his survey of these sections corresponds with that of Mr. Parrott’s. In view of the conflicts between Mr. Parrott’s testimony and Mr. Bum-garner’s and the fact that Mr. Bumgarner’s, at least to a lay person, is vague and uncertain and Mr. Parrott’s is easy and simple to follow, the Court will give greater weight to Mr. Parrott’s testimony and fix the lines as established by Mr. Parrott. This means that the ditch is not on the plaintiff’s land and the Court will so find.”
 

 The court found that the Hammond Ditch was not on any part of plaintiff’s property 'and that defendants (cross-complainants) were entitled to damages in the sum of $1.866.60.
 
 *352
 
 The court also found that defendants and cross-complainants had established by adverse possession a right and easement to travel over a certain roadway and cattle trail for automotive travel and the herding and transporting of cattle and livestock.
 

 Plaintiff has appealed from the judgment, and the sole contention made by her upon this appeal is that the trial court erred in accepting the testimony of respondents’ surveyor, in that his survey was not according to established legal rules.
 

 It is apparent that the principal question involved upon this appeal is whether or not the court could accept the testimony of a surveyor, Parrott, that the ditch did not trespass on the appellant’s land. Appellant’s surveyor, Bumgarner, testified the ditch did trespass. Appellant contends that the corner established by Parrott, using the proportional method, was improper since the line could be established from the calls and monuments.
 

 Parrott testified that he located the corner common to Sections 29, 30, 31 and 32 by finding a “bearing tree of fir scribed in accordance to the field notes, and also a ten inch cedar bearing tree, all scribed. ’ ’ His testimony continues: “ Q. And they were scribed to establish that corner? A. Yes I checked in from thirty inches first course and the distance in the field notes, and it matched with the rock pile—mound of rock. Q. Now from that point, in which direction did you go ? A. I went easterly, according to the field notes, just the same as called for in the field notes. Q. And how far did you go ? A. I went two miles more or less, according to the notes. Q. What were you trying to endeavor to establish? A. The corner of 27, 28 and 33 and 34. Q. When you got in that area common to Sections 27, 28, 33 and 34, what did you find, if anything, to establish that corner? A. Well, we searched the country for bearing trees which the field notes called for, something like six-seven inches of firs. I couldn’t find any scribings. The field notes did call for being a hundred feet west of the ravine more or less, and I couldn’t find any bearing trees, so I established the corner according to the field notes. Q. Now the corner that you established was how far west from the ravine ? A. It was approximately two hundred feet. Q. And why did you establish it is two hundred feet instead of one hundred feet? A. Well, I gave greater weight to the field notes course and distance because of the description between those and the ravine. Q. In other words, you gave greater weight to the course and the distance from the section corner from where you
 
 *353
 
 first started?” After establishing this corner, Parrott took a traverse to establish the common corner to Sections 28, 27, 33 and 34 in order to find the southerly corner common to Sections 33 and 34. When he got in the area he checked the government field notes and found a described tree. He measured the distance from the tree as called for in the notes and found a mound of rocks which established the northwest corner of Section 4 and the northeast corner of Section 3. Following the field notes, he established the southeast corner of Section 33 and the southwest corner of Section 34. He then established the section line separating the westerly boundary of the Luginbuhl property from the easterly boundary of the Hammond property. He surveyed the ditch to determine whether or not it trespassed on the appellant’s land and determined it did not.
 

 Mr. Bumgarner in his testimony placed the Hammond Ditch on the land owned by appellant with the quarter corner common to Sections 33 and 34 south and west of the Hammond Ditch. He stated that the amount of appellant’s property covered by the ditch was .04 acres.
 

 Appellant’s brief is devoted principally to an attack upon the testimony of Surveyor Parrott because appellant no doubt realizes that unless Parrott’s testimony can be completely discredited the judgment must be affirmed. Appellant argues that Parrott’s testimony is based upon legally erroneous grounds and should be ignored and eliminated and that when this is done there would be no substantial evidence to support the trial court’s conclusion.
 

 Appellant argues that the law is clear that monuments control over courses and distances and cites section 2077, rule 2, of the Code of Civil Procedure which reads: “When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount.” Appellant argues further that “in retracing a government survey, the field notes of the original surveyor must be followed, if possible, and the surveyor is not authorized to correct what the government has done.”
 

 While the general principles are no doubt as stated by appellant, we do not believe that they are determinative of the instant appeal. In the instant ease the trial judge viewed the premises and stated in his memorandum opinion: ‘ ‘ The Court viewed the premises and it is evident that a fire burned
 
 *354
 
 over this land some time not long ago and perhaps nearly all the markers and witness trees were destroyed. For this reason the Court must determine, if possible, the location of the boundary lines from the testimony of the surveyors. ’ ’
 

 Furthermore, as stated by our Supreme Court in
 
 Heilman
 
 v.
 
 City of Los Angeles,
 
 125 Cal. 383, at page 387 [58 P. 10] : . . The inaccuracy of the early surveys in California, as well as in other states, is a matter of such common knowledge that the courts are warranted in taking judicial cognizance of the existence of such inaccuracy, as they frequently have done....”
 

 Appellant’s chief criticism of Parrott’s testimony is upon that portion which states that he established the north corner as being 200 feet west of a ravine, whereas the field notes called for a point 100 feet west of the ravine. Appellant argues that the ravine was a natural monument and could not be disregarded by Mr. Parrott in establishing the “North Corner,” and that his testimony be ignored and disregarded because it was based on erroneous grounds. However, Mr. Parrott gave his reasons for establishing the corner 200 feet west of the ravine, and we believe it was for the trial court to weigh and evaluate his testimony. Furthermore, if Mr. Parrott had gone another 100 feet to the east, as plaintiff claims he should have, he would have been 100 feet further east toward the plaintiff’s property, which would have definitely eliminated the dispute in question for such line would have put the dividing section line of Sections 33 and 34 further east and the Hammond Ditch more on the Hammond property.
 

 While it is true that as a general rule monuments prevail over measurements “When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement” (Code Civ. Proc., § 2077, rule 2,
 
 supra),
 
 we are convinced that the record in the instant case supports the conclusion of the trial court. We believe that the following quotation from
 
 Garnsey
 
 v.
 
 Poston, 52
 
 Cal.App.2d 828 [127 P.2d 17] (hearing denied), at page 830, is applicable to the instant case:
 

 “The appellants contend, however, that the reference to Cottonwood Creek should govern and that the other courses and distances in the field notes should be disregarded, with the result that the quarter section corner would be placed 1.54 chains (101 feet) westerly from Cottonwood Creek, and with the further result that this would throw the southern end of the middle line of the section 600 feet out of place, giving the
 
 *355
 
 east half of the section a very much larger acreage than the west half. The appellants cite
 
 Ferris
 
 v.
 
 Coover,
 
 10 Cal. 589, as authority for the proposition that natural monuments must control over courses and distances. This is not always true, especially where the reference to a natural monument is incidental, the same is at an intermediate point, and no clear intention appears to make such calls locative.
 
 (Mendenhall
 
 v.
 
 Paris,
 
 84 Cal. 193 [23 P. 1095] ;
 
 Goss
 
 v.
 
 Golinsky,
 
 12 Cal.App. 71 [106 P. 604].) The last named case involved facts almost identical with those now before us. In that case the court said:
 

 “ ‘The calls for these natural objects are intermediate and apparently incidental calls, and are not referred to or marked in such manner as to identify them or show that the original surveyor considered that they were controlling.
 
 (Mendenhall
 
 v.
 
 Paris,
 
 84 Cal. 196 [34 P. 1095].) It is clear that confusion would result if we attempt to locate the land from those natural objects, and hence resort must be had to the distances given as controlling.
 
 (Hostetter
 
 v.
 
 Los Angeles T. R. Co.,
 
 108 Cal. 38 [41 P. 330].) Since the marks of the government survey are obliterated and the corner cannot be located by witnesses or by reference to identified monuments, the measurements indicated in the field note should be followed. . . . ’ ”
 

 Notwithstanding the earnest and able argument of appellant, we are convinced that the issue in the instant case was one of fact. The trial court heard and observed the witness and also viewed the premises. Issues of fact must be determined in the trial court, and we are satisfied that the conclusion of the trial court that the Hammond Ditch was located on the land of respondents is supported by the evidence and the law.
 

 The judgment is affirmed.
 

 Van Dyke, P. J., and Peek, J., concurred.