Filed 2/18/15  Sdun v. Patterson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| HOLGER SDUN et al., | C070623 |
| Plaintiffs, Cross-defendants and Respondents, | (Super. Ct. No. 34201000088020CUORGDS) |
| v. | |
| KAREN L. PATTERSON, | |
| Defendant, Cross-complainant and Appellant. | |

Following a bench trial about a boundary dispute, defendant and cross-complainant Karen L. Patterson appeals from a judgment quieting title in favor of plaintiffs and cross-defendants Holger Sdun and Elizabeth Payne, and enjoining defendant from a continuing trespass.  Defendant also appeals from postjudgment orders on costs and sanctions.

1

Defendant argues (1) plaintiffs' evidence of the boundary line was insufficient as a matter of law and fact; (2) the trial court erred in finding her prior use of the disputed strip was permissive so as to defeat her claim for prescriptive easement; (3) the finding of trespass was inconsistent with the finding of permissive use; and (4) various errors taint the orders on costs and sanctions.

We affirm the judgment and postjudgment orders.

FACTS AND PROCEEDINGS

In 1984, defendant bought her home at 512 Coloma Way in Sacramento. The house faces easterly, as shown in the diagram attached as Appendix A. In 2007, plaintiffs purchased the corner lot north of defendant's property from previous owners Grove and Dora Arnold. Plaintiffs' garage and driveway face Coloma Way, but their house faces north on Pala Way.

The disputed strip of land is 3.66 feet wide and 50 feet long. It lies alongside the plaintiffs' driveway, garage, and a 52-inch-long grapestake fence that extends from the back of plaintiffs' garage to the Pala Way property of neighbor and nonparty Eric Holst. Defendant's deep lot borders the properties of both plaintiffs and Holst. A utility pole marks the back end of the disputed strip.

In 1986, defendant replaced old fencing between her property and Holst's property with new redwood fencing that stops at the utility pole. From there, a grapestake fence ran north about three and a half feet, then bent 90 degrees to the east and ran 52 inches before ending at plaintiffs' garage. She did not replace the grapestake fencing because she assumed it belonged to the Arnolds.

Defendant also maintains an eight-and-a-half-foot-long redwood fence attached to the side of her house and the side of plaintiffs' garage, separating the front and back yards. Defendant says her fence replaced a similar fence that was there when she bought her home.

2

Plaintiffs discovered the boundary issue in 2010, when they and Holst replaced the fencing between their properties and discovered the "jog" in the fence line.

Defendant, who is an attorney but was represented by counsel, testified she always assumed the boundary line was plaintiffs' garage, driveway, and the grapestake fence. She landscaped and maintained the disputed strip. The Arnolds periodically trimmed back ivy that grew on the grapestake fence. On one occasion, the Arnolds asked and obtained defendant's permission to move painting equipment through her backyard pool gate, so they could paint the back side of their garage. Defendant testified to a cordial relationship with the Arnolds. Defendant also testified she "expected that [plaintiffs] could access the portion of the side of the garage that's in my front yard at will. [¶] And I expected that if they thought they had any need to enter . . . my backyard, for purposes of accessing the backside of their garage, they would either ask me or they could remove their grape stake fence for access." If plaintiffs had asked for access, defendant would have granted it.

After discovering the boundary issue, plaintiffs hired licensed land surveyor Dirk Slooten. He prepared and filed with the county surveyor a "corner record" (Bus. & Prof. Code, §§ 8765, 8773) marking the corners of plaintiffs' property. At trial, he testified a corner record, rather than a more comprehensive record of survey, was appropriate in this case because there were no material discrepancies in the records, and sufficient monumentation was located. Slooten, through employees whose work he reviewed, used a metal detector to locate metal monuments in the streets, as indicated by circles on the 1926 Wright and Kimbrough Tract No. 33 subdivision map that created plaintiffs' parcel. It was typical for maps of that time period to use circles to indicate iron monuments under the streets. Slooten found iron monuments at the center of Pala and Coloma, as well as Coloma and D Street. The corner record showed the monuments as 1/2 inch iron pipe, but upon reviewing the photographs at trial, Slooten acknowledged one was an iron pin rather than an iron pipe. He confirmed the location of the monuments by surveying

3

additional curb locations around the block. There was a deviation of a couple of tenths of a foot, which he attributed to the type of equipment used in 1926. He then determined the boundary line using GPS surveying equipment. Slooten did not determine all four corners of defendant's property; he only determined the common boundary with plaintiffs' property. Slooten looked at both the 1926 Wright-Kimbrough map that created plaintiffs' lot and the 1938 Sutter Park subdivision map that created defendant's lot. He saw no overlap or gap. Had there been a discrepancy, the older Wright-Kimbrough map would have controlled.

Slooten determined the boundary line is 3.66 feet south of plaintiffs' driveway and garage, forming a straight line with the undisputed boundary between defendant's and Holst's lots.

Defense expert, licensed land surveyor and engineer Herbert C. Langdon, opined Slooten should have done a record of survey rather than a corner record. But Langdon did not do his own survey and did not testify that Slooten's conclusion was incorrect. Instead, Langdon simply criticized details of Slooten's work. For example, Langdon thought all circles on the tract map were dimension points rather than monument markers. He testified one of the monuments identified in Slooten's corner record as 1/2 inch iron pipe was a 3/8 inch "rebar," and the other was a 1/4 inch steel rod. Langdon criticized Slooten for not establishing the boundary line between the Wright-Kimbrough and Sutter Park subdivision maps to see if there was any overlap, but Langdon did not say there was in fact an overlap. Langdon criticized Slooten for not using the ancient grapestake fence as evidence of the boundary line.

When asked at trial whether she had directed her expert to determine the boundary line, defendant indicated it was not necessary because none of her theories were based on a "strict survey."

The trial court issued a Statement of Decision quieting title to the disputed strip to plaintiffs. The trial court found that Slooten's survey was a retracement of the lines

shown on the 1926 tract map; there was no material discrepancy in the position of points or lines, or in dimensions as set forth in the original subdivision map; and there was sufficient monumentation found to establish the precise location of the Plaintiffs' property corners. The court noted Slooten's corner record identified the monuments as 1/2 inch iron pipes, but the trial evidence indicated that one iron pipe was 3/8 inch, and the other monument was an iron nail rather than an iron pipe. The court found these discrepancies immaterial because the iron markers were located in the center of the street intersections in conformity with their location as drawn on the Wright and Kimbrough subdivision map. The trial court found the boundary line established by Slooten was the true boundary line.

The trial court found that other circumstantial evidence supported Slooten's conclusion. In order for the property line to run exactly along the side of plaintiffs' garage and driveway, as asserted by defendant, there would have to be a "jog" in defendant's property line. Yet all third-party maps submitted as exhibits, including the subdivision map and defendant's preliminary title report, show a straight line from front to back of defendant's property without any turns or jogs.

The trial court further found a trespass by defendant in her fence that attaches to the side of plaintiffs' garage.

The trial court rejected defendant's claim of adverse possession, because she failed to prove she paid property taxes for the disputed strip of land. The court rejected defendant's contention that she paid more for her property because it included the disputed strip. Her expert, W. Jack Kidder, testified he "intuitively" thought defendant paid more, but he offered no basis for his intuition. The court did not believe defendant reasonably thought the fencing and landscaping indicated the boundary, since the fencing made a 90 degree "jog" at plaintiffs' property line, whereas the subdivision map and preliminary title report showed the entire side of defendant's property as a straight line.

5

The dimensions of the parties' parcels on the assessor's map are identical to the lots drawn on the recorded subdivision maps.

The trial court rejected defendant's theory of prescriptive easement, which requires open and notorious use that is under a claim of right and hostile to the true owner. Defendant testified she and the prior owners of plaintiffs' lot had consensual joint usage of the strip, and defendant "expected" the Arnolds and plaintiffs could use the strip as necessary. There was no claim of right by defendant to the exclusion of the true owners. To the extent defendant's use is currently adverse and hostile to plaintiffs, such use commenced only in the last three years, which was less than the five years required for a prescriptive easement.

The trial court rejected defendant's theories of "agreed boundary" and equitable easement (not challenged on appeal).

On March 5, 2012, the trial court entered judgment quieting title in favor of plaintiffs and granting declaratory and injunctive relief. The judgment states plaintiffs' evidence established the correct boundary line is 3.66 feet southwesterly of plaintiffs' garage, as determined by the corner record prepared by Dirk Slooten, and 3.66 feet of defendant's fencing perpendicularly attached to plaintiffs' garage encroaches upon plaintiffs' property. The judgment enjoins defendant from maintaining the fencing that encroaches and commands that plaintiffs are allowed to remove the encroaching fencing. The judgment provides that defendant shall not prevent plaintiffs from constructing a fence along the true boundary line. The court entered judgment for plaintiffs on all of defendant's affirmative defenses and entered judgment against defendant on her cross-complaint. Defendant filed a notice of appeal from the judgment.

Plaintiffs filed a cost memorandum.

Defendant filed a motion to tax costs on various grounds. As most pertinent to this appeal, defendant challenged deposition costs and expert witness fees associated with plaintiffs' designation of real estate broker Truman Rich as an expert expected to testify

6

regarding valuation of the disputed strip. Plaintiffs did not call Rich as a trial witness. Defendant submitted her own declaration stating she took Rich's deposition in December 2011 and learned he helped plaintiffs in purchasing the property; he had not been asked to form any expert opinion; he thought he would be asked only general questions about real estate practices; his employer required him to obtain a release of liability from plaintiffs' counsel; and he did not know plaintiffs were going to pay him and was surprised when they gave him a $250 check the morning of the deposition.

Defendant also filed a motion for sanctions (Code Civ. Proc., § 2023.030) against plaintiffs and their attorney for misuse of the discovery process. Defendant alleged the designation of Rich as an expert was a "sham" designed to burden her with additional costs of litigation.

Plaintiffs opposed both motions and asked the court to impose sanctions against defendant. Plaintiffs asserted they designated Rich to dispute defendant's claim that she paid more for her house due to inclusion of the strip, but during trial it appeared unnecessary to call him as a witness.

In ruling on the motion to tax costs, the trial court allowed plaintiffs to recover costs for Rich's deposition and expert witness fee. Defendant had designated her own expert to testify in support of her claim that she paid more for her property due to inclusion of the strip -- the same issue for which Rich was designated. While Rich first stated in deposition that he had not formed any opinions in the lawsuit, he later said he was prepared to answer questions regarding the valuation of the disputed strip in his capacity as a realtor in that neighborhood. The court concluded that, while Rich's lack of experience as an expert and prior relationship with plaintiffs may have affected the weight of his testimony, those factors did not render the deposition unnecessary to the litigation. The court also allowed costs for Rich's expert witness fees of $250. The court noted defendant had rejected a settlement offer by plaintiffs under Code of Civil Procedure section 998, and the trial court had discretion under that statute to allow the

prevailing party the costs of experts who aid in preparation for trial, even if the expert does not testify.  The trial court responded to defendant's claim that Rich should have been a percipient witness rather than an expert because he stated in deposition that he told plaintiffs when they bought the property that the property line did not seem normal.  The court stated defendant failed to show that this affected his ability to place a value on the disputed strip or render an opinion whether it factored into the price of defendant's home.

The trial court denied defendant's sanctions motion as untimely and instead ordered defendant to pay plaintiffs $1,108.29 in sanctions.  The court initially signed an order imposing sanctions against defendant and her attorney but later amended it to limit the order to defendant.

DISCUSSION

I

*Standard of Review*

" 'The question presented to the court in a boundary dispute is not that of making a resurvey but one of determining as a question of fact from the preponderance of expert and nonexpert evidence (as in all other civil cases) the actual location of the monuments, corners or lines as actually laid out on the ground by the official surveyor.'  [Citation.] 'The questions where the line run by a survey lies on the ground, and whether any particular tract is on one side or the other of that line, are questions of fact.  [Citation.]' " (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 737 (*Bloxham*).)  " 'Surveyors and civil engineers, like other experts, may give testimony on questions involving matters of technical skill and experience with which they are peculiarly acquainted.  [Citations.]' . . . The weight and credence to be given an expert's testimony is a question for the trier of fact.  [Citation.]" (*Id.* at pp. 737-738.)

In reviewing the evidence for its sufficiency, we resolve all evidentiary conflicts and indulge all reasonable inferences in favor of the judgment.  (*Bloxham, supra*,

8

228 Cal.App.4th at p. 739.) Where a statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. (*In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 342.)

## II

### *Boundary Line*

Defendant argues the trial court erred in quieting title in favor of plaintiffs, because (1) Slooten prepared only a corner record rather than a record of survey; (2) Slooten's work was inadequate to constitute substantial evidence of the boundary line; and (3) the trial court erroneously disregarded Langdon's testimony. Under this heading, she mixes factual and legal questions but fails to show error as to either.

As to the survey, defendant argues Slooten's preparation of a "corner record" (Bus. & Prof. Code, §§ 8765, 8773) rather than a "record of survey" (Bus. & Prof. Code, § 8762) was contrary to law, invoking de novo review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800-801.) We disagree.

Business and Professions Code section 8765 provides: "A record of survey is not required of any survey: . . . [¶] . . . [¶] (d) When the survey is a retracement of lines shown on a subdivision map, official map, or a record of survey, where no material discrepancies with those records are found and sufficient monumentation is found to establish the precise location of property corners thereon, provided that a corner record is filed for any property corners which are set or reset or found to be of a different character than indicated by prior records. For purposes of this subdivision, a 'material discrepancy' is limited to a material discrepancy in the position of points or lines, or in dimensions. . . ." Any licensed surveyor may file a corner record for any property corners. (Bus. & Prof. Code, § 8773.)

9

Defendant cites *Saunders v. Polich* (1967) 250 Cal.App.2d 136 (*Saunders*), for the proposition that a surveyor's opinion is insufficient when it is dependent on a survey that is insufficient as a matter of law. *Saunders* is distinguishable. There, the plaintiff's surveyor admitted he did not commence his survey from any known point established by a prior official government survey and failed to locate or use any markers or monuments established, as section corners or otherwise, by prior documents. He instead relied on a Department of Highways freeway survey, without comparing the field notes to the official survey. (*Id*. at pp. 141-142.) The appellant court concluded the plaintiff's survey was insufficient as a matter of law. (*Ibid*.)

Here, Slooten did locate and use monuments identified in the 1926 subdivision map and explained why he did a corner record rather than a record of survey. The trial court found Slooten's survey was a retracement of the lines shown on the original subdivision map, there was no material discrepancy in the position of points or lines, or in dimensions as set forth in the original subdivision map, and there was sufficient monumentation found to establish the precise location of the plaintiffs' property corners. The court noted Slooten's corner record identified the monuments as 1/2 inch iron pipes, but the trial evidence indicated that one iron pipe was 3/8 inch, and the other monument was an iron nail rather than an iron pipe. The court found these discrepancies immaterial because the iron markers were located in the center of the street intersections in conformity with their location as drawn on the Wright and Kimbrough subdivision map (Tract No. 33).

On appeal, defendant argues Slooten's preparation of a corner record instead of a record of survey was unjustified because of the absence of pertinent monuments of record on the Tract No. 33 map, and his failure to find monumentation in the field matching the monuments he reported in his corner record. These arguments are based on a distortion of the record and seek to convert a substantial evidence matter into a question of law. A similar attempt was rejected in *Luginbuhl v. Hammond* (1960) 179 Cal.App.2d 350,

10

where the appellant argued the trial court erred in accepting the surveyor's testimony because the survey was not according to established legal rules. *Luginbuhl* stated the surveyor gave his reasons for doing what he did, and it was for the trial court to weigh and evaluate his testimony. (*Id*. at p. 354.)

Defendant claims the Tract No. 33 map contains no reference to pipe monuments but contains only "tiny circles," and Slooten acknowledged at trial that tiny circles may or may not be pipe monuments, and maps sometimes label iron monuments as such without using circles. However, Slooten explained he concluded based on his experience that these circles were pipe monuments, and he did not merely assume the circles were iron monuments but found the monuments and verified and corroborated them, taking measurements of the curb splits and calculating the data to pinpoint the center point of the intersection. By failing to include in her appellate brief this evidence favorable to the judgment, defendant has forfeited her substantial evidence claim. (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.)

She also forfeits by omitting from her Appellant's Appendix evidence favorable to the judgment. The Statement of Decision noted that all maps prepared by third parties showed a straight line boundary and stated, "See for example the following exhibits, Exh. 6, 29, 50, 102, 104, 105, 142 and 157." Yet defendant on appeal omits all but two of these exhibits from her Appellant's Appendix. Plaintiffs provide some of the omitted exhibits in the Respondents' Appendix. Various documents show the north boundary of defendant's lot as a straight line. These include a drawing by defendant's architect in connection with defendant's remodeling plans for the north side of her property. An assessor's map attached to defendant's preliminary title report shows the boundary as a straight line with no deviation but states "Important: This plat is not a survey. It is merely furnished as a convenience to locate the land in relation to adjoining streets and other lands and <u>not</u> to guarantee any dimensions, distances, bearings, or acreage." (Orig. emphasis.) Nevertheless, the assessor's map is consistent with the other documents.

11

Under a separate heading that Slooten's work was insufficient evidence of the boundary, defendant argues (1) Slooten agreed to do a corner record before he knew whether he would find sufficient monumentation; (2) he did not survey defendant's boundary on the Sutter Park Tract map; (3) he did not have much independent recollection about the job in his trial testimony a year and a half after completing the job; (4) his filing of the corner record was not timely and had to be resubmitted twice because county staff found earlier submissions unacceptable; and (5) he improperly relied on the fence defendant built between her lot and Holst's lot because it corroborated the opinion his clients wanted, while ignoring the older grape-stake fence. But, none of these arguments establish insufficiency of the evidence.

Defendant then asserts the most important proof of insufficiency of the evidence is that Slooten treated tiny circles as iron monuments, and that he suddenly altered his finding in a significant way by stating at trial that one monument was an iron nail, not an iron pipe. We have already rejected these points.

Defendant argues the trial court disregarded Langdon's testimony on the erroneous ground that Langdon failed to perform his own survey, which assertedly constituted misallocation of the burden of proof, a legal error triggering de novo review. (*Kellogg v. Garcia* (2002) 102 Cal.App.4th 796, 802 (*Kellogg*).) Again, we disagree.

Defendant cites closing arguments in the trial court. As defense counsel presented closing arguments about adverse possession and prescriptive easement, the trial court noted these theories depended on defendant using someone else's property, i.e., "you have the burden of showing that there was a piece of property that belonged to someone else." The court noted defense expert Langdon did not say where the boundary line was and did not say plaintiffs' expert was wrong about where the boundary line was. The court framed the problem, "I don't know what you all are going to do if I conclude that both sides fail to carry their burden of proof. You're basically arguing that they [plaintiffs] haven't established the boundary line." The court asked, "how can you have a

prescriptive easement on something you haven't even established belongs to someone else?" Defendant's counsel said the prescriptive easement claim was predicated on plaintiffs having carried their burden of proof on their quiet title claim. The court replied, "No, no. You're the cross-complainant. You have the burden of proving that your client either used somebody else's property and, therefore, has a prescriptive easement or paid taxes on someone else's property [for adverse possession], so you haven't done that either. Because you haven't established where the boundary line was and that she was actually using the neighbor's property at any time. [¶] So if I just take your case, maybe they haven't proved their case, what have you proved? You proved that you have a lot of criticism against their expert and you proved there's this disputed strip, but you haven't proven your case. You know, if they were to dismiss their case right now, you haven't proven a thing, so where would you all be? You'd all be back in the same place you were before." The trial court directed counsel to proceed but added, "It just strikes me the defense spent most of its time trying the negate the plaintiffs' case but hasn't proved its own cross-complaint. You're a plaintiff on the cross-complaint."

We do not impeach a ruling with the trial court's oral remarks preceding it. (*Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 199.) While oral remarks may be considered if they show the judgment was based on an erroneous view of the law (*Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 611), such is not the case here.

Defendant's position is that she did not need to prove who owned the strip. If plaintiffs failed to prove ownership of the strip, that would be the end of the case, and defendant's cross-claims would be unnecessary. If plaintiffs proved ownership of the strip, defendant could claim a prescriptive easement without disputing plaintiffs' evidence of the boundary line. However, defendant was not merely claiming prescriptive easement but was also claiming she owned the disputed strip. On the latter issue, she had the burden to refute plaintiffs' evidence of the boundary line. Moreover, the trial court's

13

oral remarks were made after all the evidence was in, and therefore did not affect the parties' presentation of their cases.

Further, the trial court's comments must be taken in context. They came during closing arguments before the trial court had made any determination as to the ownership of the contested strip. Defendant, in her cross-complaint, pleaded a cause of action confirming her right to use the disputed strip of property on the theory that she had established a prescriptive easement thereto. One of the elements of a cause of action seeking the declaration of a prescriptive easement is that the use claimed has been hostile to the true owner of the property. (See generally, 12 Witkin, Summary of Cal. Law, (10th ed. 2005) Real Property, § 401, p. 469.)

At this stage of the proceedings, the trial court was merely noting that, not yet having decided that plaintiffs were the true owners of the property in question, there had not yet been a determination of who the "true owner" was. As we read it, the court was, at that point, only observing that, if he decided the plaintiffs' claims failed and they had not proven they were the true owners of the parcel, there was no evidence in the record, defendant not having conceded ownership in plaintiffs, that plaintiffs owned the property over which defendant claimed a prescriptive right. In other words, the court was only suggesting the proof appeared insufficient on defendant's cause of action for a prescriptive easement, for which defendant had the burden of proof, in that the proof failed to show that defendant's claim was hostile "to the true owner." Unless the court later found for plaintiffs on their claim that they were the true owners of the property, there would have been no determination as to who the true owner was for lack of proof on that point.

A failure of proof on plaintiffs' part that they were the true owners of the property did not necessarily equate to a finding that defendant was. There was, as this matter was pled by the parties, a possibility that the court could have found against the plaintiffs on their quiet title action *and* against defendant on her cause of action for a prescriptive

14

easement or her other causes of action based upon insufficient proof. In part, these comments reflect on defendant's decision to plead legally inconsistent claims, which she was entitled to do, that is, that she owned the property, but if plaintiffs owned the property, she had a right to a prescriptive easement across that strip of land.

As it turned out, of course, the trial court found that defendant had not established her right to a prescriptive easement based on a failure of proof that her use of the property was "hostile" to whomever the owner was for the required period.

In any event, defendant fails to show the trial court misallocated the burdens of proof or based the judgment on an erroneous view of the law.

We also note that, contrary to defendant's claim, the court did not disregard Langdon's testimony. As reflected in closing arguments and in the Statement of Decision, the trial court merely recognized Langdon was not much help at trial, because his testimony was limited to a critique of Slooten's methods without refuting Slooten's conclusion and without offering Langdon's own opinion on the location of the boundary line.

We conclude defendant fails to show error in the trial court's finding as to the location of the boundary line.

III

*Prescriptive Easement*

Defendant argues the trial court erred in denying her a prescriptive easement, because the court misinterpreted the law regarding hostile use.

To establish a prescriptive easement, defendant had to prove not only that she used the disputed strip continuously for five years, but that her use was open and notorious, hostile to the true owner, and under a claim of right. (Civ. Code, § 1007 [title by prescription]; Code Civ. Proc., § 321 [adverse use for five years]; *Grant v. Ratliff* (2008) 164 Cal.App.4th 1304, 1308 (*Grant*) [trial court reasonably concluded use was not

15

adverse but rather a family accommodation].)  Prescriptive easements express a preference for use, rather than disuse of the land.  (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 769 (*Hirshfield*).)  Where, as here, a party seeks a limited right to use the property of another, the prescriptive easement does not confer title but only an easement to use the property.  (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1306.)

"Claim of right" does not require a belief or claim that the use is legally justified; it means no more than that possession be hostile, which in turn "means only that the owner has not expressly consented to it by lease or license or has not been led into acquiescing in it by the denial of adverse claim on the part of the possessor."  (*Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 450 (*Felgenhauer*).)

Hostile possession may be established when the occupancy or use commenced through mistake.  (*Gilardi v. Hallam* (1981) 30 Cal.3d 317, 322 (*Gilardi*).)  "When it appears that the occupier enters the land mistakenly believing he is the owner, possession is adverse unless it is established by substantial evidence that he recognized the potential claim of the record owner and expressly or impliedly reflected intent to claim the disputed land only if record title was determined in his favor."  (*Id*. at p. 326.)  The hostility requirement " 'means, not that the parties must have a dispute as to the title during the period of possession, but that the claimant's possession must be adverse to the record owner, "unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter." ' "  (*Id*. at pp. 322-323.)  The adverse user " ' "must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest." ' "  (*Myran v. Smith* (1931) 117 Cal.App. 355, 362.)  " 'The presumption of ownership of land is with the paper title and clear evidence is necessary to overcome this presumption; and the adverse claim of right must not only exist in the mind of the claimant, but must be proved to have been communicated in some way to the owner, so that his failure to

object may be taken against him as an acknowledgement or acquiescence in the right claimed.  [¶] . . . [¶]  A prescriptive title cannot arise out of an agreement, but must be acquired adversely, and it cannot be adverse when it rests upon a license or mere neighborly accommodation.' "  (*Case v. Uridge* (1960) 180 Cal.App.2d 1, 8.)

We review trial court decisions on prescriptive easements for substantial evidence. (*Felgenhauer, supra*, 121 Cal.App.4th at p. 449.)  "Whether the use is hostile or is merely a matter of neighborly accommodation . . . is a question of fact to be determined in light of the surrounding circumstances and the relationship between the parties.  [Citations.]" (*Warsaw v. Chicago Metallic Ceilings, Inc*. (1984) 35 Cal.3d 564, 572 (*Warsaw*) [found hostile use where commercial property owner used adjacent strip of land for truck turnaround while attempting to negotiate an express easement, and adjacent owner refused to negotiate].)

Here, the trial court found defendant's use of the strip during the Arnolds' occupancy was not hostile to the Arnolds' ownership because, according to defendant's own testimony, she and the Arnolds had consensual joint use of the strip; she expected them to use it; they did use it; she made no claim of right to the exclusion of the Arnolds; she similarly expected plaintiffs to use the strip as necessary; and any use hostile to plaintiffs was of insufficient duration to establish a prescriptive easement.

Defendant invokes de novo review, claiming the Statement of Decision shows legal error misinterpreting hostile use and failing to accord her a presumption of hostile use from long-time use.  She cites *Warsaw, supra,* 35 Cal.3d 564, which said that continuous use over a long period of time without the landowner's interference is *presumptive* evidence of the existence of an easement and, in the absence of mere permissive use, will be sufficient.  (*Id*. at pp. 571-572.)

Plaintiffs respond by citing *Grant, supra*, 164 Cal.App.4th at p. 1309, which pointed out *Warsaw* did not mention an earlier California Supreme Court opinion, *O'Banion v. Borba* (1948) 32 Cal.2d 145, 149-150, which concluded that a presumption

17

of adverse possession does not arise from continuous use. *Grant* concluded *Warsaw* was dictum on the point, and *O'Banion* was still good law. (*Grant, supra*, 164 Cal.App.4th at p. 1309.) Even if a presumption were warranted, *Grant* concluded it would be one affecting the burden of producing evidence, not the burden of proof. (*Id*. at pp. 1309-1310.) Presumptions affecting the burden of proof implement some public policy. (Evid. Code, § 605.) While prescriptive easements provide some social benefit, continually trespassing on another's land is generally not such a social benefit to warrant a presumption affecting the burden of proof. That the party seeking a prescriptive easement has the burden of proof by clear and convincing evidence (Evid. Code, § 662 [presumption that owner of legal title is owner of beneficial title may be rebutted only by clear and convincing proof]) undermines the argument for a presumption favoring the adverse possessor.

Even assuming long-time use could give rise to a presumption of hostile use, defendant's own testimony eliminates the presumption because, as she acknowledges on appeal, "It is true that [defendant] testified that the Arnolds accessed the strip as necessary to maintain and repair the side of their garage and that she expected [plaintiffs] to do the same." This supports the trial court's conclusion of a neighborly accommodation rather than hostile use.

On appeal, defendant does not challenge the findings on the ground the trial court sustained plaintiffs' evidentiary objection to defendant's testimony about the Arnolds using and being free to use the strip to maintain their garage. Defendant's appellate brief acknowledges she so testified. It appears the trial court implicitly reversed itself as the testimony continued and the court overruled a similar objection, noting the dynamics of the relationship were relevant to the prescriptive easement claim.

We conclude defendant fails to show reversible error regarding prescriptive easement.

18

IV

*Trespass*

Defendant argues the trial court erred in finding a trespass in her maintenance of the eight-and-a-half-foot-long redwood fence attached to plaintiffs' garage. Defendant views this finding as inconsistent with the trial court's finding that her use of the disputed strip was permissive so as to defeat her claim of prescriptive easement. She says her use never varied the entire time she has been there. She nevertheless views the asserted inconsistency as immaterial, because she thinks she proved nonpermissive use ripening into a prescriptive easement.

There was no inconsistency. The trial court found defendant's use of the disputed strip was permissive during the many years the Arnolds were defendant's neighbor but became hostile after plaintiffs bought the property and disputed ownership of the strip. Defendant's hostile use was not of long enough duration for a prescriptive easement (five years), because plaintiffs filed their lawsuit about three years after buying the property. And, necessarily, once the court found that the disputed property belonged to plaintiffs and that defendant had no rights thereon, the existence of defendant's fence across the property constituted a trespass.

The trial court's findings are not inconsistent but rather are based on the differences in defendant's relationships with the previous and current owners.

Defendant raises no other issues about the judgment and fails to show any grounds to reverse the judgment.

V

*Motion to Tax Costs*

Defendant's appellate brief muddles arguments about costs and sanctions. We treat them separately.

19

The trial court allowed plaintiffs to recover costs for expert witness fees and deposition costs for their designated real estate expert, Truman Rich.

Although expert fees not ordered by the court are not allowable costs (Code Civ. Proc., § 1033.5, subd. (b)(1)), defendant acknowledges the trial court has discretion to allow these costs where, as here, defendant failed to obtain a judgment more favorable than a pretrial settlement offer she rejected. (Code Civ. Proc., § 998, subd. (d) [court may allow expert witness costs actually incurred and reasonably necessary in preparation for or during trial]; *Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 123-124.) Costs may be awarded even if the expert does not testify at trial, as long as the expert was a potential witness. (*Evers v. Cornelson* (1984) 163 Cal.App.3d 310, 317 (*Evers*).)

" 'If the items appearing in a cost bill appear to be proper charges, the burden is on the party seeking to tax costs to show that they were not reasonable or necessary. On the other hand, if the items are properly objected to, they are put in issue and the burden of proof is on the party claiming them as costs.' " (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 131 (*Nelson*).) To the extent defendant thinks her mere objection shifts the burden to plaintiffs, we disagree. The mere filing of a motion to tax costs may suffice as a "proper objection" shifting the burden if the necessity of the cost appears doubtful on the face of the tax memorandum. (*Ibid.*) However, " '[i]f the items appear to be proper charges the verified memorandum is prima facie evidence that the costs, expenses and services therein listed were necessarily incurred by the [prevailing party], and the burden of showing that an item is not properly chargeable or is unreasonable is upon the [objecting party].' [Citations.]" (*Ibid.*)

Defendant argues costs for expert Rich were improper in this case for three reasons. First, she cites *Evers*'s statement that a treating physician, as a percipient witness, was not entitled to expert witness fees because he would not be testifying "solely" as an expert. (*Evers, supra,* 163 Cal.App.3d at p. 316.) Defendant claims Rich

20

would have or should have testified as a percipient witness because he told plaintiffs when they bought the property that the apparent boundary seemed abnormal. However, the trial court found Rich was not a potential percipient witness. He had been hired as an expert regarding valuation of *defendant*'s lot -- to respond to her claim that she paid more for her property believing it included the disputed strip -- and Rich had not participated in defendant's purchase of her home.

Second, defendant argues there is no evidence plaintiffs incurred an obligation to pay Rich because Rich said at deposition that he did not believe there was a written contract and was surprised when plaintiffs' counsel gave him a check for $250. However, the trial court found the deposition transcript showed Rich was expecting to be paid but was unsure who would be paying.

Third, defendant argues Rich's services were unnecessary because there was no evidence his services were necessary. However, defendant herself made his services necessary by claiming she paid more for her property due to inclusion of the disputed strip.

Defendant next contends the trial court abused its discretion in allowing plaintiffs to recover deposition costs and expert witness fees for licensed engineer Scott Duren, who was retained by plaintiffs on issues of causation of and remedy for flooding in their garage, but who did not testify at trial. We disagree. Flooding was an issue, because defendant was claiming an equitable easement, which turns on judicial balancing of hardships. (*Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 265.) In 2010, plaintiffs wanted to install a drain on the disputed strip to stop their garage from flooding. Because they believed at the time that defendant owned the strip, they spoke about it with defendant's contractor, Jim Carrell, who was working on an addition to defendant's house, but Carrell reported defendant said no. Defendant designated her contractor, Jim Carrell, as an expert on drainage issues. Plaintiffs retained Duren, whose resume displays

21

expertise in flooding and drainage. Defendant deposed Duren and designated engineer Mark Gilbert to respond to Duren.

Plaintiffs did not call Duren as a witness in their case in chief. Defendant did not call Carrell as a witness but did call Gilbert as a witness. Plaintiffs objected. The trial court questioned the relevance of the drainage issue and of calling an expert to refute another expert whose opinion was not before the court. But the court would not exclude Gilbert -- until plaintiffs' lawyer agreed to withdraw Duren as a potential witness. The court then precluded Gilbert from testifying.

Contrary to defendant's argument, the initial attempt by plaintiffs' lawyer to reserve the right to call Duren does not reflect an underhanded strategy to exclude defendant's expert and then call plaintiffs' expert so his testimony would stand unrefuted. Defendant argues, as she did in the trial court, that Duren's services were unnecessary because he is plaintiffs' friend and lacks residential expertise. We, like the trial court, view the argument as insufficient.

Finally, defendant contends the trial court abused its discretion in awarding plaintiffs costs for their $80 filing fees and a $78 "court call" charge (to appear telephonically) relating to their earlier "unsuccessful" discovery motions, heard by a law and motion judge, to compel further answers to interrogatories and supplemental answers. However, in denying the motion to tax costs, the trial court noted one discovery motion had been granted in part, and the other had been granted in its entirety. Defendant argues that, as the motion was granted only in part, the motion was unnecessary because plaintiffs rejected defendant's compromise offer to resolve the dispute; the motion was untimely under the discovery statute; and plaintiffs failed to obtain the only discovery item they were "adamant" about obtaining. However, the motion was necessary, because defendant's initial answers were unverified, and defendant acknowledges plaintiffs did obtain relief, in that the trial court ordered defendant to provide verification for those

22

responses. We need not address defendant's footnoted assertion that the law and motion judge erred in ordering her to provide verification.

We reject defendant's tangential argument that the law and motion judge abused her discretion in denying defendant's request that sanctions be imposed against plaintiffs for discovery abuse. Code of Civil Procedure section 2023.030 authorizes a monetary sanction against a party or attorney who misuses the discovery process unless the court finds that person "acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Stats. 2012, ch. 72, § 19; prior version at Stats. 2004, ch. 182, § 23.) Defendant failed to show discovery abuse, and the law and motion judge determined sanctions were unwarranted, and defendant fails to show the court abused its discretion.

We conclude defendant fails to show any grounds for reversal regarding the motion to tax costs or the discovery motions.

VI

*Motion for Sanctions*

Defendant argues the trial court abused its discretion by denying her motion for sanctions and instead ordering her to pay sanctions.

Imposition of sanctions for discovery abuses generally lies within the trial court's discretion and is reviewed on appeal for abuse of discretion. (*Doppes v. Bentley Motors, Inc*. (2009) 174 Cal.App.4th 967, 991.) Whether a request for sanctions is timely is subject to the court's discretion as a fact-specific analysis. (*London v. Dri-Honing Corp*. (2004) 117 Cal.App.4th 999, 1008-1009.)

Defendant argues sanctions were warranted because plaintiffs' designation of Rich as a trial expert was a mere sham designed to cost defendant unwarranted burden and expense. Defendant argues the trial court erred in denying her motion for sanctions on the ground it was untimely.

23

The trial court did not address the merits because it found the sanctions motion -- filed 70 days after the trial concluded -- was untimely, and the grounds for the motion became clear long before trial. The deposition transcript showed the basis for the sanctions request -- Rich's prior relationship with plaintiffs, the release of liability, the fee issues, and his alleged unpreparedness -- were revealed at Rich's deposition, which took place 103 days before defendant filed the motion. Defendant argued the motion was timely because plaintiffs' inclusion of expert expenses in their cost memorandum proved their "sham" expert designation was a misuse of the discovery process to increase defendant's litigation expenses. The trial court rejected the argument, stating it was not an abuse of the discovery process for a prevailing party to claim costs, and if defendant truly believed she was forced to pay for the deposition of a "sham" expert, she should have brought her motion promptly after the deposition.

On appeal, defendant repeats her argument that the full depth of the sham was not revealed until plaintiffs sought costs relating to Rich. She argues an earlier motion would have been premature, but we reject that argument for the reasons stated by the trial court.

Defendant cites *Sherman v. Kinetic Concepts, Inc*. (1998) 67 Cal.App.4th 1152, for the proposition that sanctions may be mandated. There, however, the appellate court in a products liability case held the trial court erred in failing to grant a new trial and consider on the merits the plaintiffs' posttrial request for sanctions based on their fortuitous discovery of damning new evidence concealed by the product manufacturer during discovery. (*Id*. at pp. 1155-1156.) Defendant fails to show sanctions were mandated in this case.

We conclude defendant fails to show grounds for reversal regarding sanctions.

DISPOSITION

The judgment and postjudgment orders are affirmed.  Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


      HULL      , Acting P. J.


We concur:


      BUTZ      , J.


      HOCH      , J.



Appendix A