[No. B194368. Second Dist., Div. Six. July 16, 2008.]

DANIEL GRANT et al., Plaintiffs and Appellants, v.
C. WAYNE RATLIFF, Defendant and Respondent.

COUNSEL

Andre, Morris & Buttery, Kathryn M. Eppright; and Diane M. Matsinger for Plaintiffs and Appellants.

Tardiff Law Offices, Neil S. Tardiff; Farmer & Ready and Paul F. Ready for Defendant and Respondent.

OPINION

**GILBERT, P. J.**—Plaintiffs sought to establish an easement by prescription over defendant's land. The trial court found for defendant. Plaintiffs appeal contending the trial court failed to apply a presumption that the open, notorious and continuous use of defendant's land was adverse. We conclude there is no such presumption here and affirm.

FACTS

George Leage and his wife, Claire, owned 33 acres of land in Morro Bay. The land was divided into two parcels, "Parcel A," consisting of 13 acres, and "Parcel B," consisting of 20 acres. The Leages lived in a mobilehome on Parcel A. A roadway, approximately 12 feet wide, runs along the boundary between the parcels at various locations. The roadway is not a recorded easement.

In 1976, the Leages divided Parcel B into two lots.[1] The parcel map does not show the road. Instead, access to Parcel B is shown on the parcel map by a different road that runs through a portion of Parcel B.

In 1984, the Leages entered into a postnuptial agreement. The agreement allocated Parcel A to Claire and Parcel B to George. The agreement did not mention an access easement. When the parties separated in May of 1985, they conveyed Parcel A to Claire as her sole and separate property and Parcel B to George as his sole and separate property. The deeds did not mention an easement. The parties divorced in 1986.

After the parties' separation in 1985, Claire moved away. George continued to live in the mobilehome on Parcel A with his son, Brandon, until 1987 or 1988. After George and Brandon moved out of the mobilehome, another son, Troy, lived there until 1992. The mobilehome remained vacant from 1992 until 1994, when Claire leased Parcel A to Howard Trew. Thereafter some of Trew's agricultural workers occupied the mobilehome.

In 1991, George built a house on Parcel B. He sold the two parcels that comprise Parcel B to C. Wayne Ratliff in separate transactions in 1995 and 1999.

In 1997, Claire sold Parcel A to Daniel and Carol Grant. After close of escrow, Ratliff posted Parcel B with signs pursuant to Civil Code section 1008.[2] Such a posting prevents any person's use from ripening into a prescriptive easement.

The trial court found: The only possible period of continuous adverse use of Parcel B was between 1994, when Parcel A was leased to Trew, and 1997, when Ratliff posted Parcel B pursuant to Civil Code section 1008. That is an insufficient period. The use of the mobilehome on Parcel A by the Leages' sons was for the accommodation of family members rather than under a claim of right. Under the circumstances of this case, "no flag was sufficiently unfurled" to give reasonable notice to George Leage that Troy's use of the road presented a threat to his title to Parcel B.

---

[1] Although the parties refer to the divided Parcel B as lots 1 and 2, for clarity, we continue to refer to the parcel as Parcel B.

[2] Civil Code section 1008 provides: "No use by any person or persons, no matter how long continued, of any land, shall ever ripen into an easement by prescription, if the owner of such property posts at each entrance to the property or at intervals of not more than 200 feet along the boundary a sign reading substantially as follows: 'Right to pass by permission, and subject to control, of owner: Section 1008, Civil Code.' "

## DISCUSSION

■ The elements necessary to establish an easement by prescription are open and notorious use of another's land, which use is continuous and uninterrupted for five years and adverse to the land's owner. (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 [199 Cal.Rptr. 773, 676 P.2d 584].)

The Grants rely on the Leages' sons' use of the roadway during the time they lived in the mobilehome. The Grants claim the trial court erred in finding the Leages' sons used the road as an accommodation for family members rather than adversely. Instead, the Grants contend the court was compelled to apply the "well settled" presumption that the open, notorious and continuous use of another's land is adverse to the owner. The Grants claim the presumption shifts the burden of proof to the owner to show the use was permissive. (Citing *Chapman v. Sky L'Onda etc. Water Co.* (1945) 69 Cal.App.2d 667, 678 [159 P.2d 988].) But the existence of such a presumption is anything but well settled.

■ In *O'Banion v. Borba* (1948) 32 Cal.2d 145, 149–150 [195 P.2d 10], our Supreme Court discussed California cases that considered whether a presumption of adverse use arises from open, notorious and continuous use. The court concluded that no such presumption arises, stating: "The preferable view is to treat the case the same as any other, that is, the issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom. The use may be such that the trier of fact is justified in inferring an adverse claim and user and imputing constructive knowledge thereof to the owner. There seems to be no apparent reason for discussing the matter from the standpoint of presumptions. For the trial court the question is whether the circumstances proven do or do not justify an inference showing the required elements." (*Id.* at p. 149.)

One would have thought this ended the matter. But in *Warsaw v. Chicago Metallic Ceilings, Inc., supra*, 35 Cal.3d 564, 571–572, the question was whether substantial evidence supported the trial court's finding that the plaintiff's use of the defendant's property was adverse. Our Supreme Court, adopting the Court of Appeal opinion in the case, stated: "The issue as to which party has the burden of proving adverse or permissive use has been the subject of much debate. However, [] [we agree with the view, supported by numerous authorities,] that continuous use of an easement over a long period of time without the landowner's interference is presumptive evidence of its existence and in the absence of evidence of mere permissive use it will be sufficient to sustain a judgment." (*Ibid.*, original brackets.)

In so deciding, our Supreme Court did not discuss or even cite its own opinion in *O'Banion.* Instead, the court cites the Court of Appeal opinion in *MacDonald Properties, Inc. v. Bel-Air Country Club* (1977) 72 Cal.App.3d 693, 701–702 [140 Cal.Rptr. 367]. *MacDonald,* without discussing or citing *O'Banion,* concludes, "We think the better and more widely held rule is that continuous use of an easement over a long period of time without the landowner's interference is presumptive evidence of its existence." (*Id.* at p. 702.)

Miller and Starr take the position that there is a split of authority on whether the presumption arises, with the more recent Court of Appeal decisions favoring the creation of a presumption that shifts the burden to the owner of the servient tenement to establish the use was permissive. (6 Miller & Starr, Cal. Real Estate (3d ed. 2006) § 15:32, pp. 15-123 to 15-125.) Witkin cites the holdings in both *O'Banion* and *MacDonald,* thus also indicating a split of authority. (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 402, pp. 470–472.)

We too are convinced that *Warsaw* did not overrule *O'Banion.*

First, *Warsaw* entirely ignored *O'Banion's* substantial discussion of the presumption and its reason for rejecting it. It would seem that had *Warsaw* intended to overrule *O'Banion,* it would have discussed its reasons for doing so.

Second, *Warsaw's* analysis was based on substantial evidence, not a presumption. *Warsaw* stands for nothing more than that the open, notorious and continuous use of another's land is sufficient evidence to support a finding that the use was adverse. Not to be presumptive, we think the discussion of presumption was at best dictum. *O'Banion* distinguished sufficiency of the evidence cases from cases in which presumptions are truly at issue. (*O'Banion v. Borba, supra,* 32 Cal.2d 145, 150 ["While many of the cases mention presumptions, the problem actually discussed therein is the sufficiency of the evidence in the light of all the circumstances disclosed."]; see, e.g., *Applegate v. Ota* (1983) 146 Cal.App.3d 702, 709 [194 Cal.Rptr. 331] [applying the "presumption" in the context of sufficiency of the evidence].) The *O'Banion* court recognized it is one thing to say that particular evidence supports a finding the trier of fact has made; it is quite another thing to say that the evidence requires the trier of fact to make a particular finding.

For these reasons, *Warsaw* does not control merely because it was decided after *O'Banion.* The analysis in *O'Banion* governs this case.

Even if *Warsaw* dictates that we analyze the issue as a presumption, it does not specify the type of presumption. The trial court here stated the presumption was one affecting the burden of producing evidence, not the burden of

proof. If a presumption is warranted, we agree with the trial court that it is one affecting the burden of producing evidence.

■ A presumption affecting the burden of producing evidence requires the trier of fact to presume the existence of the presumed fact unless or until evidence is introduced to support a finding of its nonexistence. (Evid. Code, § 604.) When such evidence is introduced, the trier of fact must determine the existence or nonexistence of the presumed fact without regard to the presumption. (*Ibid.*) A presumption affecting the burden of producing evidence is not established to implement a public policy. (*Id.,* § 603.) Typically such a presumption does nothing more than reflect a logical inference. (See 1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Presumptions, § 54, p. 203.)

■ A presumption affecting the burden of proof is a presumption established to implement some public policy. (Evid. Code, § 605.) Certainly the doctrine of prescriptive easement, like all legal doctrines, exists to provide some social benefit. But continually trespassing on another's land is generally not such a socially useful activity that a presumption affecting the burden of proof in favor of an easement by prescription is warranted. In addition, a party seeking to establish a prescriptive easement has the burden of proof by clear and convincing evidence. (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 938 [74 Cal.Rptr.3d 436].) The higher standard of proof demonstrates there is no policy favoring the establishment of prescriptive easements.

■ Here evidence that the alleged adverse users are the landowner's sons traveling to and from their former family home is more than sufficient to rebut a presumption affecting the burden of producing evidence, and even sufficient to rebut a presumption affecting the burden of proof. Whatever acrimony may have existed between the parents, the Grants cite no evidence that the relationship between George Leage and his sons was anything other than a normal father and son relationship. It is true, as the Grants assert, that related parties do not always accommodate each other. But there is no reason to believe that is the case here. The trial court's conclusion that the sons' use of the road was not adverse but was a matter of family accommodation is reasonable. Indeed, under the circumstances, it is the only reasonable conclusion.

Moreover, the Grants' position is anomalous. The Grants derive their title through Claire Leage. But the trial court found no actual use of the road by Claire herself sufficient to create a prescriptive easement. In fact, Claire testified she moved away from the property after she separated from her husband. If Claire obtained an easement by prescription, it was through her sons. But her sons' use would only be attributable to Claire if her sons were

using Parcel A under Claire's title. (See 6 Miller & Starr, Cal. Real Estate, *supra*, § 15:37, p. 15-143 [Tenant's possession is sufficient to establish a prescriptive right in favor of landlord].) The trial court did not find Claire gave her sons express permission to use Parcel A. Instead, the trial court found her sons' use of Parcel A was a matter of family accommodation. Apparently the Grants would have the trial court find that Claire's sons were using her parcel under her title, but their father's parcel adversely. The Grants point to nothing in the evidence that would support such a bizarre dichotomy. Instead, the Grants rely on a presumption that the sons' use of their father's parcel was adverse, without explaining why a presumption of adverse use should not apply equally to the sons' open, notorious and continuous use of their mother's parcel.

The judgment is affirmed. Costs are awarded to respondent.

Coffee, J., and Perren, J., concurred.