Filed 6/27/13  Veley v. Campbell CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SUSAN E. VELEY,<br><br>    Plaintiff and Appellant and Cross Respondent<br><br>v.<br><br>FRED DOUGLAS CAMPBELL, et. al,<br><br>    Defendants and Respondents and Cross Appellants.  . | 2d Civil No. B236526<br>(Super. Ct. No. CV090246)<br>(San Luis Obispo County) |

This matter concerns a dispute between neighbors over a prescriptive easement and the destruction of pecan trees.  Susan E. Veley appeals from a judgment following a court trial.  Veley contends that the trial court erroneously granted a prescriptive easement to Fred D. Campbell and Betty C. Campbell, husband and wife.  The prescriptive easement permits the Campbells and their lessees to use a road that runs across Veley's property.

The Campbells cross-appeal from the judgment.  They contend that the trial court erroneously concluded that Veley was not liable for her former husband's act of cutting down pecan trees on the Campbells' property.  The Campbells argue that Veley's former husband was her agent acting within the scope of his authority.

We affirm the judgment in its entirety.

*Veley's Appeal*

*Factual and Procedural Background*

Veley and the Campbells own adjoining parcels in San Luis Obispo County. Veley purchased parcel 4 in 2006. The Campbells purchased parcels 5 and A in 1976 and 1977. A road, hereafter "the disputed road," "proceeds more or less along the boundary between Parcels 4 and 5, sometimes being located entirely on Parcel 4, and other times entirely on Parcel 5. [It] continues past the driveway to the Veley residence on Parcel 4, and thereafter is completely located on Parcel 5." The road "proceeds for several miles to a hilltop" on the Campbells' property, where "several cell phone companies" have leased space "for maintaining their relay towers" (cell sites).

The Campbells continuously maintained the disputed road by sharing expenses with involved property owners. In 1995 they spent approximately $19,000 to repave the road, install culverts, and make "it a full all-weather road." In 2006 the disputed road was officially named "Campbell Lane" following a public hearing.

The Campbells leased "the bulk of [their] property for grazing." From 1976 to about 2004, tenants Tony and John Silva used the disputed road "for access for their farm trucks."

For about 20 years the Campbells had tenants living in two mobile homes on parcel A. The tenants used the disputed road for access. From 1976 to 1980 the Campbells' son lived in one of the mobile homes and used the disputed road.

In 1995 the Campbells started leasing cell sites to cell phone companies. All of the sites are on parcel 5. The first lessee was Cellular One. Its lease started January 1, 1995. The lessees used the disputed road to access the cell sites. The disputed road approached the cell sites from the south. A northern road was also available, but the disputed road was "preferred" because it was actively maintained, had "lower slopes," and was an "all-weather, all-year road." The northern road was "compromised by weather."

2

The Campbells never asked for permission to use the disputed road. Betty Campbell testified: "We didn't have permission. It was our right to use the road." Pat O'Brian, who sold parcel 5 to the Campbells, "told us this was our road to use." Before they bought parcel 5, the Campbells "were given three different tours of the property. In each case, [the disputed road] was the access point that [they] used."

No one objected to the Campbells' use of the disputed road until approximately August 2008 when Veley objected. Where the road enters her property, she erected a gate and a "No Trespassing Sign."

Cellular One accessed its cell site via the disputed road from January 1995 until Veley stopped it from using the road in 2008. Cellular One used the disputed road 8 to 10 times each year. Since 2008, Cellular One has used the northern road.

From about 1977 to November 2000, Virginia Sevra owned parcel 4 (Veley's property) and lived there. During this period, she saw the Campbells and their "renters" use the disputed road. They never asked Sevra for permission to use the road, and she never objected to their using it. Sevra was aware of cell sites on the Campbells' property.

In April 2009 the Campbells filed an action against Veley to quiet title to a prescriptive easement over the disputed road. Veley filed a cross-complaint against the Campbells and the lessees of cell sites on the Campbells' property. Except for Cellular One, all of the lessees settled with Veley, and the cross-complaint against them was dismissed.

After a court trial, judgment was entered granting the Campbells a prescriptive easement over the disputed road. The easement "includes vehicular access for the Campbells themselves, their guests and lessees." The easement, however, is restricted as to cell phone companies. The judgment provides: "The Campbells have the right to designate, on a yearly basis, up to three cell phone companies as coming within the scope of their easement. The usage by more than three such companies . . . would be unreasonable and is therefore not permissible. The Campbells may change the designees each year." Notice of the designated cell phone companies must be given to

3

Veley or her successor in interest. On Veley's cross-complaint, judgment was entered in favor of the Campbells and Cellular One.

*Sufficiency of the Evidence*

" [A] party seeking to establish a prescriptive easement has the burden of proof by clear and convincing evidence. [Citation.] The higher standard of proof demonstrates there is no policy favoring the establishment of prescriptive easements." (*Grant v. Ratliff* (2008) 164 Cal.App.4th 1304, 1310.)

"The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years. [Citations.] Whether the elements of prescription are established is a question of fact for the trial court [citation], and the findings of the court will not be disturbed where there is substantial evidence to support them." (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570.) There is no presumption "that the open, notorious and continuous use of [another's] land was adverse." (*Grant v. Ratliff*, *supra*, 164 Cal.App.4th at p. 1306.)

"The substantial evidence standard of review involves two steps. ' First, one must resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all *reasonable* inferences. [Citation.] Second, one must determine whether the evidence thus marshaled is substantial.' . . . '[T]he power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record,* there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.' " (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1363.)

Veley claims that the evidence is insufficient because it shows that, instead of being adverse, "the use of The Disputed Road by the occupiers of Parcel[s] 5 and A was permissive and nothing more than a neighborly accommodation." We disagree. "That [the Campbells'] use of the road was under claim of right is substantiated by the

4

evidence since [the Campbells] testified they believed they had a . . . right to use the road, they never asked permission, . . . used the road openly, and were never given permission [to use the road]." (*Applegate v. Ota* (1983) 146 Cal.App.3d 702, 710.) Furthermore, Virginia Sevra, a prior owner of Veley's property from about 1977 to November 2000, testified that the Campbells and their "renters" had used the disputed road, but they had never asked her for permission. According to Sevra, the vehicles on the road included "automobiles, pickup trucks, stock trailers, [and] horse trailers."

*Grant v. Ratliff*, *supra*, 164 Cal.App.4th 1304, is distinguishable. There, the trial court concluded that the use of a road by the sons of the road's owner did not establish an easement by prescription because the use "was for the accommodation of family members rather than under a claim of right." (*Id*., at p. 1307.) In affirming the judgment, this court reasoned: "[T]he [plaintiffs] cite no evidence that the relationship between [the landowner] and his sons was anything other than a normal father and son relationship. It is true . . . that related parties do not always accommodate each other. But there is no reason to believe that is the case here. The trial court's conclusion that the sons' use of the road was not adverse but was a matter of family accommodation is reasonable. Indeed, under the circumstances, it is the only reasonable conclusion." (*Id*., at p. 1310.)

Unlike the sons in *Ratliff*, the Campbells and their lessees were not members of Sevra's family. Furthermore, unlike the trial court in *Ratliff*, the trial court here ruled in favor of the parties seeking to establish an easement by prescription. "We must therefore view the evidence in the light most favorable to the [Campbells], giving [them] the benefit of every reasonable inference . . . ." (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.) Applying this standard of review, we conclude that substantial evidence supports the finding that the use of the disputed road by the Campbells and their lessees was adverse and not merely a neighborly accommodation.

### Five Year Period

Veley claims that the evidence is insufficient to show continuous use of the disputed road for an uninterrupted period of five years. " 'The actual use required

depends on the nature of the easement.  It need not be used every day during the prescriptive period.  The use is sufficient if it occurs on those occasions when it is necessary for the convenience of the user.'  [Citation.]  'If a right of way over another's land has been used for more than five years, it is not necessary, to make good such use, that the claimant has used it every day.  He uses it every day, or once in every week, or twice a month, as his needs require.  He is not required to go over it when he does not need it, to make his use of the way continuous.  The claimant is required to make such reasonable use of the way as his needs require.'  [Citation.]"  (*Fogerty v. State of California* (1986) 187 Cal.App.3d 224, 239.)

Substantial evidence supports the trial court's finding of continuous use of the disputed road for an uninterrupted period of five years.  The Campbells' farming tenants, the Silvas, used the disputed road from 1976 to about 2004 "for access for their farm trucks."  From 1976 to 1980 the Campbells' son used the disputed road to access a mobile home in which he was living.  Thereafter, for about 20 years the Campbells' tenants in two mobile homes used the disputed road.  Finally, from 1995 until August 2008 the cell phone companies used the disputed road to service their cell sites.

*Tenant Origination of Adverse Use*

Veley contends that the evidence is insufficient to establish a prescriptive easement as to the use by the cell phone companies "because the disputed road was not expressly or impliedly included in the cell company leases."  Veley relies on *Murray v. Fuller* (1947) 82 Cal.App.2d 400.  There, the appellate court stated: "[I]t is well-settled that a tenant cannot *originate* adverse user in his landlord's favor, when his lease does not expressly or impliedly include the easement [citations omitted] . . . ."  (*Id*., at p. 406, italics added.)  The omitted citations include only federal and out-of-state cases.

6

The appellate court's statement is dicta and therefore "is not authority upon which we can rely. [Citations.]"[1] (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 850, fn. omitted.) The appellate court concluded that, because "[t]he evidence was sufficient to show an implied agreement with plaintiffs' several tenants" allowing them to use a driveway, "the use by the tenants would inure to the benefit of the landlords." (*Murray v. Fuller*, *supra*, 82 Cal.App.2d 406-407.) The court was not presented with and made no decision concerning the situation where the lease does not expressly or impliedly include the adverse use. " ' "An appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.' " [Citation.]' [Citation.]" (*Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1006.) In any event, the dicta is inapplicable here because the cell phone companies did not *originate* the adverse use of the disputed road. Furthermore, it is reasonable to infer that the leases with the cell phone companies impliedly included the right to use the disputed road. Fred Campbell testified that, before signing the lease with Cellular One, the company's agents visited the cell site "many times," "primarily through the [disputed road]." Campbell "point[ed] out [to the agents that] there was another access [the northern road] in case of an emergency . . . . But the preferred route is the southern route [via the disputed road]." Campbell also testified that, before signing leases with the other cell phone companies, he "would escort their engineers and contractors through the various routes to the site," i.e., both the disputed road and the northern road.

*Argument that Prescriptive Easement Is Too*
*Vague and Uncertain To Be Enforceable*

---

[1] A leading treatise on California property law states: "While one case [*Murray v. Fuller*, *supra*, 82 Cal.App.2d at p. 406] stated, in dicta, that a tenant cannot originate the adverse use unless the easement is expressly or impliedly included within the lease, at least two cases have held that a prescriptive right was established even though the use was originated by the tenant without the particular use being included within the terms of the lease." (6 Miller & Starr Cal. Real Estate (3d ed. 2011) § 15:38, pp. 146-147.)

7

Veley argues that "the terms of the prescriptive easement giving the Campbells the right to designate three random cell companies to use the road on an annual basis so long as written notice is given to [her] or her successors in interest is too vague and uncertain." But these terms are plain and unambiguous on their face. Veley propounds numerous hypothetical situations where the terms allegedly would create uncertainty. We need not and do not consider these hypothetical uncertainties because their underlying facts are not before us. If uncertainties arise in the future, the trial court will be able to deal with them. In its judgment the court reserved "jurisdiction to intervene, if necessary, in future confrontations regarding the use of [the disputed road]."

*The Campbells' Cross-Appeal*

*Factual and Procedural Background*

In April 2010 the Campbells amended their complaint to add a cause of action seeking damages for Veley's alleged destruction of pecan trees located on the Campbells' property. Six trees were cut down on April 2, 2010, almost one year after the filing of the original complaint.

At trial Veley's former husband, Loren Veley (Loren),[2] testified as follows: He cut down the pecan trees under the mistaken belief that they were on Veley's property. Veley did not tell him to cut down the trees. "She didn't say anything about the trees." Loren was helping his son "clean up the road that goes up the hill to [Veley's] house." The son lived in the house with his mother, Veley. On the road "there were a lot of large broken limbs and dry, cracked branches everywhere." Loren decided that "it seemed best to go ahead and cut the trees down because they were kind of a hazard with everything laying in the road."

Veley testified that, because of "torrential winds," branches had broken off the pecan trees and had fallen onto the road. Veley asked Loren to clean up the road "so we could get up to the house."

---

[2] At the time of trial, Veley and Loren had been divorced for at least 20 years.

In its statement of decision, the trial court declared: "The Campbells have not carried their burden of proving by a preponderance of the evidence that Veley is responsible for cutting down the pecan trees. The evidence shows that . . . [Loren] trespassed upon . . . Parcel 5 and cut down six pecan trees. . . . The Court is persuaded that [Veley] did not authorize the cutting, and is therefore not legally responsible for the acts of her ex-husband."

*Argument that Loren Was Veley's Agent*

*Acting Within the Scope of His Authority*

The Campbells claim: "As a matter of law, Veley's son and ex-husband were her agents acting within the scope of their agency when they destroyed the trees. Therefore, Veley is liable under the doctrine of *respondeat superior*." The Campbells acknowledge that "Veley instructed her ex-husband to help clear broken branches that had fallen from the trees onto the road during a storm." They further acknowledge that Loren, "on his own, decided to cut down [six] pecan trees."

"A principal cannot be held [liable] when an actual agent acts beyond the scope of his actual or ostensible authority. [Citations.]" (*Van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 573.) "The question of whether an agent acted on behalf of a principal is a question of fact, and on appeal, we review the trial court's decision to determine whether there is substantial evidence, uncontradicted or contradicted, to support it. [Citations.]" (*Seneca Ins. Co. v. County of Orange* (2004) 117 Cal.App.4th 611, 618.)

Viewing the evidence in the light most favorable to the judgment, the trial court reasonably concluded that Loren's act of cutting down the pecan trees exceeded the scope of his authority. Veley testified that she had asked him to clean up the road "so we could get up to the house."

Citing *Rodgers v. Kemper Construction Co.* (1975) 50 Cal.App.3d 608, the Campbells argue that Veley should be held responsible under the "rationale that the employer's liability should extend beyond his actual or possible control over the employees to include risks inherent in or created by the enterprise because he, rather

9

than the innocent injured party, is best able to spread the risk through prices, rates or liability insurance. [Citations.]" (*Id.*, at p. 618.) This rationale "is grounded upon 'a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities.' [Citations.]" (*Ibid.*) But Loren was not Veley's employee, and the clearing of branches from the road to Veley's home did not relate to the activities of a business enterprise. In any event, it is reasonable to infer that Veley's instructions to remove the branches from the road did not involve a foreseeable risk that the recipient of these instructions would not only remove the branches, but would also cut down the trees from which the branches had fallen. (See *Ibid* ["One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity"].)

*Disposition*

The judgment is affirmed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

10

Charles E. Crandall, Judge

Superior Court County of San Luis Obispo

_____

Niel S. Tardiff, for Appellant.

John F. Hodges, for Respondent.