Filed 8/3/23  Jacobs v. Tran CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOHN JACOBS, dba BAYSIDE EXCAVATION AND CONSTRUCTION<br>Plaintiff and Respondent,<br>v.<br>VINCENT TRAN et al.,<br>Defendants and Appellants. | A165475<br><br>(Del Norte County Super. Ct. No. CVUJ-2019-1153) |

Plaintiff Johnny Jacobs dba Bayside Excavation and Construction (Jacobs) filed a complaint for quiet title against Vincent and Nipa Tran (the Trans) seeking a prescriptive easement to continue using a skid-trail road across a small portion—200 feet of a four-acre parcel—of the Trans' property for continued access to Jacobs's rock quarry.  Following a court trial, the court entered judgment for Jacobs.  The Trans appeal, making three arguments:  (1) the court may not grant a prescriptive easement for activities that constitute a public nuisance; (2) the court may not grant a prescriptive easement for activities that violate zoning ordinances; and (3) no substantial evidence supported the elements of a prescriptive easement by clear and convincing evidence.  We affirm.

1

## BACKGROUND

### The Properties, Their Ownership, and the General Setting

The properties involved are two parcels in Del Norte County, on North Bank Road, a rural area near the Smith River. One parcel is owned by Jacobs (County Assessor's Parcel No. APN105-130-67), the other by the Trans (APV 105-130-57).

Both parcels were once part of a single 21-acre parcel owned by Herbert and Reva Jacobson. In 1989, the Jacobsons divided the property, and sold a 17-acre parcel to Jacobs, a parcel on which a rock quarry was operating. Jacobs has lived in the Del Norte community since the 1940s, 68 years at the time of trial and had been a licensed contractor for over 50 years. He was also a member of the Del Norte Planning Commission, a position he held for over 12 years.

The Jacobsons retained the remaining four-acre parcel for use as a residential property, which they later sold to Michael and Michelle Shine. And in 2002, the Shines sold the four-acre parcel to the Trans. As the trial court would put it, "The entirety of the skid-trail/roadway at issue was once completely within the united Jacobson parcel and when the property was split in 1989 the short section of the skid-trail/roadway in issue became part of the four-acre residential property now owned by defendants."

As set forth in detail below, after acquiring the property, Jacobs continued to operate the quarry, in connection with which he used the skid road, doing so for many years. And in 2019 he filed the subject lawsuit.

### The Proceedings Below

On June 5, 2019, Jacobs filed a complaint against the Trans for quiet title and to establish easement by prescription.

Following the overruling of their demurrer, on December 30, the Trans filed their answer. It was two pages long, and also had an exhibit that listed eight boilerplate affirmative defenses. Notably, in light of the arguments the Trans make here, the answer makes no mention of "public nuisance," "zoning ordinances," or anything similar.

On January 15, 2021, the case was set for court trial on September 16, 2021.

On June 10, the Trans moved to vacate the court trial and set a jury trial and settlement conference. Jacobs filed opposition on the basis that the right to jury trial is limited to actions at law, and that a quiet title action is equitable in nature. The trial court denied the motion, and the bench trial was confirmed—a ruling the Trans do not contest on appeal.

The parties filed pre-trial briefs, the Trans' brief, brief indeed—four pages. Again notably, their brief makes no reference to public nuisance, zoning ordinances, Public Resources Code, the Surface Mining Control and Reclamation Act (SMCRA), or any other rule or regulation that is the focus of the Trans' position on appeal.

Against that background, the trial began, the issue whether Jacobs could prove a prescriptive easement in light of the applicable law, law we recently confirmed in *Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 725–726 (*Husain*):

"To establish a prescriptive easement the party claiming it must show use of the property that has been 'open, notorious, continuous, and adverse for an uninterrupted period of five years.' (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 [(*Warsaw*)]; see *Applegate v. Ota* (1983) 146 Cal.App.3d 702, 708; CACI No. 4901.) ' "[A]n essential element necessary to the establishment of a prescriptive easement is visible, open and

3

notorious use sufficient to impart actual or constructive notice of the use to the owner of the servient tenement." ' (*McLear-Gary v. Scott* (2018) 25 Cal.App.5th 145, 159 [(*McLear*)].)

"Two other divisions of this court have elaborated on the concept of 'adverse.' Division Four said that the ' "term 'adverse' in this context is essentially synonymous with 'hostile' and ' "under claim of right." ' [Citations.] A claimant need not believe that his or her use is legally justified or expressly claim a right of use for the use to be adverse. [Citations.] Instead, a claimant's use is adverse to the owner if the use is made without any express or implied recognition of the owner's property rights. [Citations.] In other words, a claimant's use is adverse to the owner if it is wrongful and in defiance of the owner's property rights. [Citation.]" [Citation.] [¶] . . . " . . . To be adverse to the owner a claimant's use must give rise to a cause of action by the owner against the claimant. [Citations.] This ensures that a prescriptive easement can arise only if the owner had an opportunity to protect his or her rights by taking legal action to prevent the wrongful use, yet failed to do so." ' (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1181 (*McBride*).) And Division One: ' "[a]dverse use" means only that the claimant's use of the property was made without the explicit or implicit permission of the landowner.' (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252.)

"The existence or nonexistence of each of the elements of a prescriptive easement is a question of fact. (*Twin Peaks Land Co. v. Briggs* (1982) 130 Cal.App.3d 587, 593.) As the Supreme Court put it, 'Whether the use is hostile or is merely a matter of neighborly accommodation, however, is a question of fact to be determined in light of the surrounding circumstances and the relationship between the parties.' (*Warsaw*, *supra*, 35 Cal.3d at

4

p. 572.)  The burden of proof as to the elements of a prescriptive easement is on the one asserting the claim, here, [Jacobs].  And as to that burden, it is, as [the trial court] held, and as the parties agreed, clear and convincing evidence.  (*Grant v. Ratliff* (2008) 164 Cal.App.4th 1304, 1310; *Applegate v. Ota, supra*, 146 Cal.App.3d at p. 708.)[1]"

That, then, is the setting in which the trial began, a trial that involved a straightforward issue.  As counsel for the Trans early-on described it, "This is a factual dispute.  Is [Jacobs] using the road or not."  Or, as the Trans' brief here puts it, "at issue is a 200-foot portion of the [Trans'] property which [Jacobs] claims he has been driving over since 1990 for use in his mining activities."  As will be seen, that is precisely what Jacobs testified to in detail, testimony confirmed by various other witnesses and evidence.

Trial commenced as scheduled, on September 16, 2021, before the Honorable Leonard LaCasse, sitting on assignment, the Del Norte County judges having recused themselves.[2]  The trial began with Judge LaCasse, counsel, and the parties conducting a site visit to the property, which visit included walking the skid/trail/roadway over which Jacobs claimed the easement.  And as Judge LaCasse would come to describe it, that "skid/trail/roadway started down near North Bank Road on plaintiffs' property, ascended upwards around the face of the cliff, continued across a corner of [the Trans'] property, . . . then continued up to the top of the cliffs on [Jacobs's] property."

---

[1] One case is contrary, holding that the burden of proof is preponderance of the evidence.  (*Vieira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057, 1074.)

[2] And quite an apt assignment it appeared to be.  Judge LaCasse had joined the Mendocino County court in 2002, prior to which he described himself as having "practiced [law] in Mendocino County, did what we call dirt law because everything there was an old logging road or something or other."

5

Following the site visit, Judge LaCasse heard motions in limine, followed by opening statements from the attorneys. Again, like the Trans' answer and their trial brief, the opening statement by the Trans' attorney said nothing about nuisance or ordinances. Seven witnesses would come to testify, and over 50 exhibits were introduced.

The first witness was Jacobs, who testified that in 1989 he bought a 17-acre parcel from the Jacobsons, a property that had been used as a rock quarry since 1946 or 1947. Shortly after his purchase, Jacobs began using the skid road, using it anywhere from several times a year up to 20 to 30 times a year. The skid road was the primary access to the quarry. The road was used to get heavy equipment from the bottom of the quarry to the top, which equipment was necessary to clear brush, push dirt, clear trees, blast, and push rocks over the edge. And, Jacobs said, the skid road that was inspected on the first day of trial is used in the same way as it had been since 1990.

Jacobs understood he had a right to quarry up to 20,000 yards a year for his own use without going through the SMCRA. However, in 2005, Jacobs was to begin selling to another customer, Tidewater Contractors Inc., and because of this the county required Jacobs to obtain a permit. So, in September 2005, Jacobs applied for a use permit, which application included mining and reclamation plans. In 2006, Jacobs obtained such a permit—a permit that was reissued by the County Planning Commission every five years, specifically in 2011, 2016, and most recently in 2021.

In 2006 or 2007, Jacobs sub-divided his 17-acre parcel to give a portion to his son Jeremy. Jacobs hired Schlack Associates to do a survey, which showed that the skid road went across the tip of the Trans' property. Jacobs continued to use the skid road after this, never asking for permission.

6

In 2008 or 2009 (perhaps 2010), Jacobs saw the skid road blocked with T-posts. Asked what he did, he said he just "pulled [the] T-posts out, stacked them politely in a pile by the side of the road, and I went on using the property."

As will be seen, in addition to that from Jacobs, the evidence included witnesses and exhibits whose testimony and contents corroborated much of what he said.

Following the close of evidence, counsel for the Trans said he would like to "make some argument when things are fresh in [his] mind." Judge LaCasse allowed him to make some "wrap-up comments," to "tell me what's on your mind." And counsel did, referring to Jacobs's credibility and the claimed absence of any corroborating testimony. Not one word was said about nuisance, zoning, or the public resources code.

The parties filed written post-trial briefs. The Trans' post-trial brief was 20-pages long, and on page 18, the last of the Trans' five arguments was this: "**e. Court Cannot Grant Easement which Violates Zoning Law**," which argument began as follows: "Finally and perhaps most importantly, this Court does not have the authority to grant an easement which violates zoning laws. Prescriptive rights 'are limited to the uses which were made of the easements during the prescriptive period. Therefore no different or greater use can be made of the easements without the defendants' consent.' [Citations.]"

As can be gleaned from the above, this is the first time any claim of violation of zoning law was set forth in writing.

On October 29, the matter was submitted. And on November 15 Judge LaCasse issued, and on November 18 filed, his memorandum decision, finding for Jacobs.

7

On December 9, the Trans filed a request for a statement of decision, a request that, in interrogatory form, asked Judge LaCasse to address these eight specific questions:

"1. What evidence established that a roadway existed across Mr. Tran's property prior to 2005?

"2. Did any evidence establish that Mr. Jacobs identified the roadway at issue in the Reclamation Plan required by the [SMCRA] and the Public Resources Code?

"3. Did Mr. Jacobs's use of Mr. Tran's property violate the [SMCRA]?

"4. Did officials from the County of Del Norte testify that Mr. Jacobs's use of Mr. Tran's property violated Del Norte County zoning laws?

"5. Did officials from the County of Del Norte testify that Mr. Jacobs's use of Mr. Tran's property was not allowed under the permit he was issued for his rock quarry activities?

"6. Did Mr. Jacobs's use of Mr. Tran's property violate Del Norte County zoning laws?

"7. Please explain the legal basis for granting an [e]asement which violates local zoning laws.

"8. Did any evidence show that Mr. Jacobs ever identified the use of Mr. Tran's property in any application he made to any governmental authorities for a permit to operate a rock quarry. If so, please identify the evidence."[3]

---

[3] We cannot help but observe that most of the requests were improper, as a reading of the applicable law demonstrates. That is, while a request may ask for the legal or factual basis of the court's decision, it may not "interrogate the judge" on evidentiary matters. (*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 525, overruled on other grounds by *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 184–185; *Kroupa v. Sunrise Ford* (1999)

Judge LaCasse requested that Jacobs prepare a proposed statement of decision, which he did. And on February 10, 2022, Judge LaCasse filed his statement of decision elaborating his holding for Jacobs. After its introductory paragraphs, the statement of decision began with its description of the claim at issue:

"Plaintiff claimed that he was entitled to a prescriptive easement to the skid-trail/roadway that crossed the southeast corner of defendants' property in order to transport large earthmoving equipment from the landing next to North Bank Road to the top of the quarry cliffs because he and his predecessors had used it openly, notoriously, adversely, and uninterrupted for a period longer than [five] years prior to defendants' efforts to block the skid-trail/roadway in 2010.

"Defendants denied this claim, and countered that the skid-trail/roadway had not existed for at least [five] years prior to them blocking the skid-trail/roadway in 2010."

The statement of decision then set forth Judge LaCasse's "findings of relevant facts," as follows:

"The Court finds that there is substantial credible evidence to a clear and convincing standard that the subject skid-trail/roadway existed, and has been used by plaintiff and his predecessor-in-interest for both logging and quarrying operations for decades. The Court finds that this use of the skid-trail/roadway has been open, notorious, continuous, adverse, and

_____

77 Cal.App.4th 835, 842; see generally *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 981–982 [A request for statement of decision was not proper where it failed to specify any principal controverted as trial, "made a laundry list of 52 demands" and "sought findings on evidentiary facts without suggesting the specific factual findings requested"].)

9

uninterrupted for many years prior to 2010 when defendants first attempted to block plaintiff's use.

"Plaintiff's property is a 17-acre rock quarry used for the extraction of rock and gravel. The defendants' property is a 4-acre residential parcel immediately north of the quarry.

"The skid-trail/roadway starts and ends on plaintiff's property, but it crosses the southeast corner of defendants' property for a short section of it in the middle of its length.

"The plaintiff's quarry parcel consists of a large, flat extraction and loading area down next to North Bank Road, adjacent to the Smith River. Facing the loading area there is a large, vertical cliff wall that is mined for rock. In order to break down the cliff wall from the top, heavy earthmoving equipment such as bulldozers, excavators, and scrapers are driven from the loading area to the top of the cliff. The skid-trail/roadway is slightly wider than the heavy equipment that uses it, i.e., about 12–14 feet wide. Whenever the property has been mined, this skid-trail/roadway has been used to accomplish it. The steepness of the cliff wall requires that equipment travel along the skid-trail/roadway around the face of the cliff wall to attain the top of the plaintiff's property.

"There is a prominent cut in the road with a high bank on the right-hand side as the road winds its way around the cliff. The cut in the road creates a precipice that unmistakably evidences a defined and established roadway. Because it is located in a rain forest, the skid-trail/roadway is sometimes covered with vegetation and ferns. When the blade of heavy equipment passes over, it looks more like a road, but when it is overgrown it looks more like a log skidding trail. The Court finds that the road has existed, and been used, for decades prior to the subject dispute."

Then, after describing the ownership of the properties, the statement of decision went on:

"The skid-trail/roadway is evident for any servient tenement holder to see. The evidence was uncontradicted that the area had been logged at least 4 times prior to 1985, perhaps as far back as the 1930s and 1940s, and it had been quarried since at least 1985. Heavy equipment was used for both logging and mining. It was uncontradicted that this skid-trail/roadway is the route that has been used whenever the property has been logged or mined.

"Until 2010, no one had ever asked permission to use any portion of the skid-trail/roadway, and no one had ever attempted to block use of the skid-trail/roadway.

"Based on the clear and convincing evidence presented, the Court finds as relevant facts that the skid-trail/roadway had existed, and been used by, plaintiff along with his predecessor-in-interest for decades prior to 2010 going back to the 1930s or 1940s. The use of the skid-trail/roadway across defendants' parcel was open, notorious, continuous, adverse, and uninterrupted for at least 21 years (from 1989 when the defendants' residential parcel was created by the property split) until 2010 when defendants first attempted to block plaintiff's use of the skid-trail/roadway."

Following all that, Judge LaCasse went on to set forth his conclusions of law—conclusions supported by numerous cases—that Jacobs had demonstrated all aspects of the law of prescriptive easement.

On May 2, 2022, judgment was entered for Jacobs, from which the Trans filed their appeal.[4]

_____

[4] On June 30, the Trans filed their notice of designation of the record on appeal, a designation that identified points not included in the testimony, such as: 1) whether the court properly granted a prescriptive easement in violation of local zoning laws; 2) whether the court properly granted a

11

## DISCUSSION

### Introduction

The Trans have filed a 27-page opening brief that, as indicated, makes three arguments. They follow a one-page statement of the case, and a "statement of facts" that the brief divides into three sections, describing them as "Jacobs," "the Trans," and "Del Norte Land Use Planners." Doing so, the Trans set forth the claimed facts in a fashion that is favorable to them, virtually ignoring the facts that Judge LaCasse relied on to hold for Jacobs. This is most inappropriate.

California Rules of Court, rule 8.204(a)(2)(C) provides that an appellant's opening brief shall "[p]rovide a summary of the significant facts . . . ." And the leading California appellate practice guide instructs about this: "Before addressing the legal issues, your brief should *accurately and fairly* state the critical facts (including the evidence), free of bias; and likewise as to the applicable law. . . . [¶] Misstatements, misrepresentations and/or material omissions of the relevant facts or law can instantly 'undo' an otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility, may draw sanctions [citation], and may well cause you to lose the case." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 9:27 (rev. # 1, 2022).) The Trans' brief ignores such instruction.

In *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, we had occasion to criticize a brief that similarly ignored the applicable law, criticism we repeat here, edited to reflect the parties and the setting:

---

prescriptive easement in violation of SMCRA; and 3) whether the court properly denied the Trans a jury trial.

"[The Trans'] brief also ignores the precept that all evidence must be viewed most favorably to [Jacobs] and in support of the [judgment]. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925–926; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) This precept is equally applicable here, where [Judge LaCasse] issued a statement of decision: 'Where a statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358.)

"What [the Trans] attempt[] here is merely to reargue the 'facts' as [they] would have them, an argumentative presentation that not only violates the rules noted above, but also disregards the admonition that [they are] not to 'merely reassert [their] position at . . . trial.' (*Conderback, Inc. v. Standard Oil Co.* (1966) 239 Cal.App.2d 664, 687; accord, *Albaugh v. Mt. Shasta Power Corp.* (1937) 9 Cal.2d 751, 773.) In sum, [the Trans'] brief manifests a treatment of the record that disregards the most fundamental rules of appellate review. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, §§ 365, 368, pp. 421–424, 425–426.) As Justice Mosk well put it, such 'factual presentation is but an attempt to reargue on appeal those factual issues decided adversely to it at the trial level, contrary to established precepts of appellate review. As such, it is doomed to fail.' (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398–399." (*In re Marriage of Davenport*, *supra*, 194 Cal.App.4th at p. 1351.)

And fail it does. The judgment is fully supported.

**The Trans' First Two Arguments Have no Merit—Indeed, They are Inappropriate**

As noted, the Trans' first two arguments assert two claimed reasons why "the court may not grant a prescriptive easement," the first because the

13

activities "constitute a public nuisance," the second because they "violate zoning ordinances." We consider them together, and easily reject them, for reasons both procedural and substantive.

As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness, as it would be unfair, both to the trial court and the opposing party, to permit a change of theory on appeal. It also reflects principles of estoppel and waiver. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548; *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) In light of this, the rule is that if a point asserted on appeal was not adequately briefed in the trial court, we may treat the point as a forfeited new theory. (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 768–770.)

As noted, at no place prior to their post-trial brief—not in their answer, their pre-trial brief, their counsel's opening statement, or his oral post-trial argument—did the Trans raise any issue as to nuisance or zoning violation. Despite that, their first two arguments on appeal claim to rely on the issue. Jacobs calls them on this, and in their reply brief the Trans respond with the conclusory arguments that Jacobs "incorrectly argues" that the Trans "did not raise permitting/zoning issues at the trial," going so far as to say that "compliance with [SMCRA] was central [*sic*] at trial." Certainly Judge LaCasse did not think it was.

In any event, the arguments have no merit. In claimed support of their position, the Trans point to the testimony of Heidi Kunstal, the Director of Community Development for Del Norte County, and Del Norte Land Use Planner Randy Hooper. While Kunstal did testify that Jacobs's use permit

14

does not allow him to cross the Trans' property, she never said the use permit was invalid. And as to Hooper, he said only that the SMCRA required identification of roads that access the property—which the skid road did not.

The Trans contend that the easement and Jacobs's use is a public nuisance under Del Norte County Municipal Code, Title 7, chapter 8, § 310(C)(2).[5] (See Civ. Code, § 3480.) And from there, the Trans rely on Public Resources Code section 2770, subdivision (a), as the statute violated, citing to the supposed legislative intent behind SMCRA at Public Resources Code section 2712.

But nowhere—not at trial, not here—do the Trans demonstrate any evidence of a violation of Public Resources Code section 2770, subdivision (a).[6] To the contrary, the evidence was that in 2005 Jacobs applied for a use permit, contemporaneously with which he submitted a reclamation plan; that he obtained the permit in 2006; and that it was re-issued every five years thereafter.

The evidence further showed that Jacobs retained Brown of Streamline Planning to work with him to assure he was in compliance with SMCRA and the county. The skid road is not included in the SMCRA report that Brown

---

[5] Which section states: "it is declared unlawful and a public nuisance for any person owning, leasing, occupying or having charge or possession of any premises or land in this County to maintain such premises or land such that any one or more of the following conditions or activities exist: . . . 'The maintenance or use of any real property in violation of any provision of the Del Norte County Code, state law, or federal law' a public nuisance."

[6] Which section states: "Except as provided in this section, a person shall not conduct surface mining operations unless a permit is obtained from, a reclamation plan has been submitted to and approved by, and financial assurances for reclamation have been approved by the lead agency for the operation pursuant to this article." (Pub. Resources Code, § 2770.)

15

prepared because, he testified—like Hooper—a reclamation project was not required to identify roads in the site, only roads that access the site.

Similarly, Blanco of Tidewater testified that he handled the quarry's use permit since 2014, which permit was reissued in 2016 and 2021. He too confirmed that the reclamation plan is concerned with trucks coming in and out of the highway, not inside the project boundary.

Moreover, nothing in the Legislative intent for Public Resources Code section 2770 speaks to protecting an adjoining property acting as a tenement for an easement. The easement here does not conflict with the Legislative intent, as it has no adverse environmental effects, does not discourage the production or conservation of minerals, does not fail to consider values relating to recreation, watershed, wildlife, range and forage, or aesthetic enjoyment, and poses no residual hazard to the Trans.

Finally, there is no evidence that the quarry violates any local zoning ordinance. The only evidence about zoning is that Brown reviewed a 2002 staff report that the County approved a zoning and general plan amendment to change Jacobs's property from residential to forest recreation, including mention that there was previous quarrying and forestry activity. No one testified there was a zoning violation.

**The Judgment is Supported by Substantial Evidence**

The Trans' third, and final, argument is that judgment is not supported by substantial evidence. The argument is easily rejected, again for reasons both legal and factual.

As quoted above, "The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property which has been open, notorious, continuous, and adverse for an uninterrupted period of five years. [Citations.] Whether the elements

16

of a prescription are established is a question of fact for the trial court [citation], and the findings of the court will not be disturbed where there is substantial evidence to support them." (*Warsaw, supra*, 35 Cal.3d at p. 570; accord *McLear, supra*, 25 Cal.App.5th at p 159.)

The Trans' argument lists seven specific items in claimed support, six of which refer to various items that supposedly "sho[w] no roadway." The six items are: "the reclamation plan"; "Google Earth photos" pre-2007; "parcel maps"; LACO Associates photo; "Jacobs's permit"; and the 2006 planning commission meeting.[7]

The argument does not even mention, let alone address, the various elements for a prescriptive easement found by Judge LaCasse here—evidence that Judge LaCasse described as "most instructive" to him: "the uncontradicted evidence" that shows the quarry "was mined since probably 1985 and logged several times before that." Rather, the Trans' argument relies solely on the assertion that the skid road did not exist before 2007, the Trans' distilling their argument this way: "Other than Mr. Jacobs's self-serving testimony that the roadway existed for decades, no other evidence existed that the roadway at issue was ever there before 2007, when Mr. Jacobs's son built a home on the old access way on Jacobs Lane.[8] [¶] Juxtaposed against Mr. Jacobs's unsupported oral testimony of the existence of a road prior to 2007, the Court was presented overwhelming evidence that a roadway either did not exist prior to 2007 or it was being concealed."

---

[7] The seventh item asserts "the Shine Easement supported the defense."

[8] One must necessarily react with some degree of bemusement when a brief describes the opponent's evidence as "self-serving." What kind of testimony would a person expect from his or her adversary?

In light of this, the Trans' argument fails because they do not "fairly summarize all of the facts in the light most favorable to the judgment." (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739 ["[i]n every appeal, 'the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment' "].)  And failure to provide all material evidence amounts to waiver of the alleged error and we may presume that the record contains evidence to sustain every finding of fact.  (*Foreman & Clark Corp. v. Fallon, supra*, 3 Cal.3d at p. 881.)

But in addition to ignoring the evidence from Jacobs, the Trans' myopic presentation of the evidence ignores the testimony of other witnesses, including Blanco of Tidewater Associates, who testified that the skid road was used at least since 2006 when Tidewater started using the quarry. Indeed, the Trans ignore the testimony of their own surveyor Killops, who identified the skid road in a 2005 aerial photo, Similarly, the Schlack Associates 2006 survey that showed the skid road.  In short, there was affirmative evidence in photos that "clearly show[]" a defined roadway, evidence Judge LaCasse pointed to in his memorandum decision.

Were all that not enough, the Trans' brief ignores the comments of Judge LaCasse himself who made the site visit at the start of trial, a visit he described in his memorandum decision this way:  "When we did it was quite evident that as one walked up the sloping curved area there was a prominent cut in the road with a high bank on the right-hand side.  This is how people build a road around a hillside.  That clearly suggests that there was a passage/road/skid-trail for a long time for all to see.  The cut in the road created a precipice that unmistakably establishes a road there."

"For a long time for all to see."

18

As we held in *Contra Costa County v. Pinole Point Properties, LLC* (2015) 235 Cal.App.4th 914, 937, the site visit " 'constituted substantial evidence in support of the questioned findings, the rule being established that the trier of fact's view of an area is independent evidence which can be considered . . . in arriving at [the judge's] conclusion and is substantial evidence in support of findings consonant therewith.' (*Key v. McCabe* (1960) 54 Cal.2d 736, 739.) 'Such evidence may be used alone or with other evidence to support the findings.' (*Frustuck v. City of Fairfax* (1963) 212 Cal.App.2d 345, 362[, implicitly overruled on other grounds in *Locklin v. City of Lafayette* (1994) 7 Cal.4th 327, 370–371, as stated in *Shenson v. County of Contra Costa* (2023) 89 Cal.App.5th 1144. 1162–1163].)"

But even if there had not been such evidence, it would not matter, as Judge LaCasse noted in his memorandum decision: the road "exists and has so existed for many years. The fact that it may not be obvious on [G]oogle [M]aps, existing records, parcel maps, surveys, etc., is not material." Or, as he summarized in his statement of decision: "Aerial photographs of the area presented at trial do not provide clear or convincing evidence of the skid-trail/roadway's existence or non-existence because the dense vegetation, trees, brush, and high grass obscure it. The area is in a coastal rainforest and the skid-trail/roadway is often covered with vegetation.

"Similarly, the fact that this skid-trail/roadway has never appeared in a [*sic*] prior parcel maps, surveys, or permit applications is immaterial to the obvious fact of its existence and uncontradicted evidence of decades of prior use for logging and mining operations.

"The fact that the skid-trail/roadway was not listed or mapped in permit application documentation in 2005 (when the county began to require a permit to operate the quarry) is irrelevant to the issues at trial. The Court

19

finds that the skid-trail/roadway both existed, and was used for logging and quarrying, for decades before permits were required, and therefore, plaintiff has established a right to a prescriptive easement to continue to use it."

## DISPOSITION

The judgment is affirmed.  Jacobs shall recover his costs on appeal.

_____

Richman, J.

We concur:

_____

Stewart, P.J.

_____

Markman, J. *

*Jacobs v. Tran* (A165475)

*Superior Court of Alameda County, Judge Michael Markman, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.